**UNITED STATE DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

NORTHWELL HEALTH, INC.

Plaintiff,

Case No. 2:23-cv-00977-JMA-AYS

-against-

**COMPLAINT**

BLUE CROSS AND BLUE SHIELD
OF MASSACHUSETTS, INC.

Defendant.

-----------------------------------------------------------x

Plaintiff Northwell Health, Inc. ("Northwell"), by and through its attorneys, Butler Tibbetts LLC, as and for its complaint, alleges as follows:

1.      Northwell is a New York not-for-profit corporation that operates hospitals and health care facilities that provide health care services to the public. The principal place of business of Northwell is located at 2000 Marcus Avenue, New Hyde Park, New York 11042. Northwell brings this lawsuit on its own behalf and on behalf of each of the hospitals, health care facilities, and healthcare professionals in the Northwell health system.

2.      The Defendant, Blue Cross and Blue Shield of Massachusetts, Inc. ("Defendant"), is an out of state not-for-profit corporation organized under the laws of the Commonwealth of Massachusetts, with its principal place of business located at 101 Huntington Avenue in Boston, Massachusetts 02109.

**NATURE OF ACTION**

3.      Northwell brings this action against the Defendant for damages arising from the Defendant's failure to timely and fully pay the amounts due to Northwell or ensure that Northwell

1

was properly paid in accord with the applicable contract for the healthcare services that Northwell provided to members or insureds of Defendant.

4.      Upon information and belief, Northwell alleges that at all relevant times, it rendered medical care to patients that were enrolled beneficiaries and/or members of health plans sponsored, administered and/or funded by Defendant who issued health plan identification cards to these patients and instructed the patients to present that card to medical providers (including Northwell) to obtain medical care. Defendant did so with the intent to assure medical providers that they would be paid for medical care rendered to Defendant's health plans' beneficiaries at the reasonable and customary value for such care (unless a medical provider had a pre-existing written contractual relationship with Defendant to provider such medical care at certain set discounted rates).

5.      At all relevant times, Defendant and/or its agent and/or affiliate authorized the medical services at issue that were rendered to patients by Northwell.

6.      Northwell's usual and customary total billed charges for the medically necessary care rendered to the Patients amounted to $10,269,115.03.

7.      Northwell timely and properly submitted the bill for payment for the medically necessary care rendered to the Patients.

8.      To date, Defendant and/or its agents have failed to properly reimburse Northwell for the medically necessary services it rendered.

9.      Northwell provided valuable, medically necessary services in accord with the applicable contracts, and it should be properly compensated in accord with said contracts.

**The Blue Card Program**

10.     The defendant participates in the BlueShield "BlueCard" or "Inter-Plan" program (referred to here as the "Blue Card Program") which permits the insureds of a BlueCard plan or network in one state to receive coverage for services received in another state.

11.     The BlueCard plan that insures or administers a patient's insurance plan is referred to as the "Home Plan," and the BlueCard Plan entity in the state where treatment occurred is referred to as the "Host Plan."

12.     When a patient with a plan insured or administered by a BlueCard plan receives medical services outside the area of said BlueCard plan, the claim is initially submitted for reimbursement by the medical provider to the Host Plan. The Host Plan processes the claim, determines the amount of reimbursement according to its negotiated rates, and submits the claim to the Home Plan for approval and finalization.

13.     Empire Blue Cross and Blue Shield ("Empire Blue Cross") is the trade name of Empire HealthChoice, Inc., and Empire HealthChoice Assurance, Inc. Empire HealthChoice HMO, Inc., also known as Empire HealthChoice, Inc, and Empire HealthChoice Assurance, Inc. (hereinafter, all Empire entities are collectively referred to as "Empire")

14.     For purposes of this lawsuit, Empire is the Host Plan; and Defendant is the Home Plan.

15.     The BlueCard Program maintains provider networks in their regions by BlueCard Plans contracting with local providers to establish certain negotiated fees for the providers' services. Through the Blue Card Program, insureds, or members of BlueCard Plans in one state can take advantage of the local, negotiated in-network rates in another state.

16.   Upon information and belief, as a condition of participation in the BlueCard Program, the Home Plans agree to be bound by the terms and conditions of the Host Plan's agreements with its local providers.

17.   The BlueCard Program, based on its affiliation, has one of the largest market presences in the country.

18.   Due to their market power, the BlueCard Program demands and ensures that all contracts with healthcare providers require said providers to participate in their BlueCard Program. Healthcare providers lack the market power to refuse.

**The Northwell – Empire Provider Agreement.**

19.   Northwell entered into in-network, participating provider agreements with Empire, which have been amended on numerous occasions (collectively, "Provider Agreement"), pursuant to which Northwell provides medically necessary health care services to patients who are members, participants, or insureds of health care plans issued or administered by Empire or its affiliates, such as the Defendant. The Provider Agreement sets forth the rates, usually discounted, that Northwell must receive for rendering health care services as well as other contractual rights and obligations of the parties.

20.   In executing the Participating Agreement, Northwell became an in-network provider within the Blue Card Program such that (among other things) the Defendant would abide by the Participating Agreement and hence agreed to pay Northwell hospitals and/or physicians for the medically necessary care rendered to the individual enrollees of the Defendant pursuant to the terms of the Provider Agreement. In general, the negotiated rates under the Provider Agreement provided for medically necessary care to be paid at a discount from Northwell's usual and customary total billed charges.

4

21.     Under the Provider Agreement, Northwell agreed to submit bills, through the Host Plan, Empire, reflecting Northwell's usual and customary total billed charges associated with rendering medically necessary care to the individual enrollees of the Defendant. In exchange, Defendant agreed to process and pay such claims according to the Provider Agreement (i.e., Northwell's usual and customary total billed charges less a specified discount).

22.     As a condition of the Provider Agreement Northwell agreed to look for payment for medical claims only to the payor as defined in the Provider Agreement, i.e., Empire, BlueCard Plan, and not to the insured, patient member, except for co-payments, deductibles, etc.

**Unpaid or Underpaid Healthcare Claims**

23.     As a not-for-profit healthcare system, Northwell is prejudiced by lengthy delays in payments, not being paid, and/or being paid less than contracted rates for the services it provides.

24.     From 2018 until the present (and continuing into the future), Northwell provided medically necessary medical services to members or insureds of the Defendant.

25.     Northwell satisfied all conditions precedent in accord with the Provider Agreement such that it should be properly paid for rendering the medically necessary services to the members or insureds of the Defendant.

**AS AND FOR A FIRST CAUSE OF ACTION
<u>AGAINST DEFENDANT</u>
(Breach of Contract – Provider Agreement)**

26.     Northwell incorporates and re-alleges the previous paragraphs 1 through 25, as if fully set out herein.

27.     The Provider Agreement governs the contractual relationship between/among the parties, and it supersedes any other document that may contradict its terms.

28.    The Provider Agreement specifies the compensation that Northwell shall receive for rendering 'Medically Necessary' services.

29.    Northwell properly submitted claims for reimbursement and said claims were processed properly.

30.    For the claims at issue, Northwell did not receive the contracted rate as set forth in the Provider Agreement despite rendering 'Medically Necessary' treatment to the members or insureds of the Defendant.

31.    The Defendant was obligated under the BCBS (Blue Cross and Blue Shield) Contracts to make payment at the rates set forth in the Provider Agreement for health services provided by Northwell.

32.    Upon information and belief, the Defendant denied or failed to properly pay some claims based upon technical denials and in doing so breached the explicit no technical denial provision in the Provider Agreement.

33.    The amount of unpaid claims due to Northwell is attributable to the Defendant's breaches of the in-network payment and/or claim determination provisions set forth in the Provider Agreement and the obligations of the BCBS Contracts.

34.    The Defendant's failure to properly pay for healthcare claims owed to Northwell breaches the BCBS Contracts.

35.    As a direct and proximate result of the Defendant's breaches of the in-network payment, claims processing, and/or terms of the Provider Agreement and the BCBS Contracts, Northwell has been injured and sustained damages in an amount to be determined at trial, but which is no less than $1,841,884.59, plus interest.

6

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST DEFENDANT
### (Breach of Third-Party Beneficiary Contract)

36.    Northwell incorporates and re-alleges the previous paragraphs 1 through 35, as if fully set out herein.

37.    In instances where the Defendant is the payor, then the applicable contracts or healthcare plans indicate that Northwell, as an out-of-state provider, should be compensated in accord with the Provider Agreement.

38.    For the claims at issue, Northwell has not received proper compensation in accord with the Provider Agreement or the BCBS Contracts.

39.    Upon information and belief, the applicable agreements that govern the Blue Card Program anticipate and expect that Northwell as an out-of-state provider will be compensated in accord with the Provider Agreement. As such, Northwell is an intended third-party beneficiary of these agreements.

40.    Despite the Defendant's obligation to pay Northwell claims the Defendant failed to abide by their contractual obligations, leaving Northwell damaged.

41.    As a direct and proximate result of the Defendant's breaches of the in-network payment, claims processing, and/or terms of the Provider Agreement, and the BCBS Contracts, Northwell has been injured and sustained damages in an amount to be determined at trial, but which is more than $1,841,884.59, plus interest.

## AS AND FOR A THIRD CAUSE OF ACTION
### AGAINST DEFENDANT
#### (Unjust Enrichment)

42.     Northwell re-alleges the allegations set forth in paragraphs 1 through 25 as if fully set forth at length herein.

43.     In the event the Defendant asserts that they are not bound by a contract to compensate Northwell, or fail to admit otherwise, then the Defendant is liable for the unjust enrichment with respect to the care provided by Northwell to the Defendant's insured or members.

44.     Northwell has provided in good faith medical services to patients insured or members of the Blue Card Plan and thereby Defendant benefited because Northwell thereby assisted Defendant in meeting their obligation to arrange for and/or pay for medically necessary care to its enrollees, including the patients, the Defendant's insured, or members.

45.     By its words and/or conduct, Defendant and/or their agents requested that Northwell provide the patients, Defendant's members or insured, with medically necessary care.

46.     The Defendant has knowledge that Northwell has been treating patients insured or members of the Blue Card Plan and Northwell thereby has conferred benefits upon Defendant in the amount of its billed charges of $10,269,115.03.

47.     The Defendant has accepted the benefits conferred upon it by Northwell.

48.     Northwell has made demand upon the Defendant for payment of the medical services Northwell provided for the benefit of the Defendant with the expectation that the fair value for its services would be paid.

8

49.    By virtue of selling its members access to in-network care provided by Northwell's facilities and providers, at in-network rates, the Defendant is unjustly enriched to the extent they do not properly pay Northwell for healthcare services provided to the Defendant's members or insureds.

50.    The Defendant failed to properly reimburse Northwell for the healthcare services provided to Defendant's members.

51.    As a consequence thereof, Defendant has been unjustly enriched, and Northwell has been damaged, by Defendant's retention of the benefits conferred upon it by Northwell, the fair value of which is to be determined at trial, together with interest at the applicable statutory rate.

## AS AND FOR A FOURTH CAUSE OF ACTION
## AGAINST DEFENDANT
### (Quantum Meruit)

52.    Northwell re-alleges the allegations set forth in paragraphs 1 through 25 and 42 through 51, as if fully set forth at length herein.

53.    In the event the Defendant asserts that they are not bound by a contract to compensate Northwell, or fail to admit otherwise, then the Defendant is liable for quantum meruit for the reasonable value of the care provided by Northwell to the Defendant's insured or members.

54.    Northwell has provided medical services in good faith to patients insured under the Defendant's health plans.

55.    The Defendant had knowledge that Northwell was, is, or could be treating patients insured under their health care plans or through the BlueCard program and that Northwell thereby has conferred benefits upon them.

56.    The Defendant accepted the benefits conferred by Northwell.

57.    Northwell is entitled to receive compensation for its work and labor in accordance with New York law.

58.    Northwell has made demand upon the Defendant for payment of the medical services that Northwell provided for the benefit of the Defendant with the expectation that the fair value for its services would be paid.

59.    The Defendant has wrongfully withheld compensation for the work and labor performed by Northwell despite the proper submission of claims by Northwell.

60.    The circumstances are such that it is inequitable for the Defendant to retain the benefits without paying the fair rate for such services, and as a result Northwell has been damaged in an amount to be determined at trial, together with interest at the applicable statutory rate.

## AS AND FOR A FIFTH CAUSE OF ACTION
## AGAINST DEFENDANT
### (Prima Facie Tort)

61.    Northwell incorporates and re-alleges the previous paragraphs 1 through 60, as if fully set out herein.

62.    Defendant's conduct in establishing their BlueCard Program and their failure to properly perform and/or ensure performance is intentional conduct.

63.    The BlueCard program is a scheme designed to permit Defendant to benefit by allowing its members/insureds to take advantage of out-of-area providers' healthcare services without complying with their obligations under the contract between the providers and the local Host Plan.

64.  Defendant's conduct in executing contracts with self-insured plans that directly conflict with the contractual obligations of the contracts between the Host Plan and local providers, in this case, the Provider Agreement, is intentional, and designed to deprive the local providers, in this case, Northwell, of the benefits and protections of its contract.

65.  Defendant's intentional conduct has caused Northwell to suffer special damages in the form of unpaid or underpaid health services.

66.  Defendant's intentional conduct lacks any justification, particularly (but not exclusively) considering that Defendant established the BlueCard Program, which by its terms, requires that Northwell be compensated in accord with the Provider Agreement.

67.  Defendant's various breaches of contract demonstrate a pattern of Defendant's intentional conduct and the corruption enveloping the BlueCard Program.  Defendant's acts demonstrate an unlawful scheme to set up their BlueCard Program, benefit from it by obtaining and maintaining the largest market presence but failing to adhere to the terms and spirit of the program so as to enrich themselves.

68.  Defendant's conduct as outlined in this complaint establishes prima facie tort.

69.  Due to Defendant's prima facie tort, Northwell has sustained special damages due to the underpaid and/or unpaid healthcare claims.

11

**WHEREFORE**, Northwell respectfully requests entry of judgment against defendants as follows:

a.  with respect to the first cause, a judgment against the Defendant in an amount to be determined at trial;

b.  with respect to the second cause of action, a judgment against Defendant in an amount to be determined at trial;

c.  with respect to the third cause of action, a judgment against Defendant in an amount to be determined at trial;

d.  with respect to the fourth cause of action, a judgment against Defendant in an amount to be determined at trial;

e.  with respect to the fifth cause of action, a judgment against Defendant in an amount to be determined at trial; and

f.  with respect to the sixth cause of action, a judgment against Defendant in an amount to be determined at trial;


DATED:  New York, New York
        February 27, 2023


                                        BUTLER TIBBETTS, LLC

                            By:    _____
                                   Timothy F. Butler, Bar No. TB8749
                                   *Attorneys for Northwell*
                                   Nine East 45th Street, 9th Floor
                                   New York, NY 10017
                                   Telephone: (212) 629-4119
                                   tbutler@butlertibbetts.com


12