# EXHIBIT A

SUPREME COURT: STATE OF NEW YORK
COUNTY OF NASSAU

PRESENT:
    HON. JEROME C. MURPHY,
                Justice.

---

**NORTHWELL HEALTH, INC.,**

                              Plaintiff,

    -against-

**BLUE CROSS and BLUE SHIELD OF
ARIZONA, INC.,**

                              Defendant.

---

TRIAL/IAS PART 5

Index No.: 618430-2022
Motion Date: 11-6-2023
Sequence No.: 002

**DECISION AND ORDER**

The following papers have been read on this motion:

Motion Sequence 002

| | |
|---|---|
| Notice of Motion, Affirmation with Exhibits............................................... | 1 |
| Memorandum of Law in Support................................................................ | 2 |
| Plaintiff's Memorandum of Law in Opposition........................................... | 3 |
| Defendant's Reply Memorandum of Law................................................... | 4 |

## PRELIMINARY STATEMENT

In Motion Sequence 002, defendant moves, pursuant to CPLR 3211(a)(1), (3), (7), (8) and (10), to dismiss the amended complaint with prejudice; and for such other and further relief as this Court deems just and proper. Opposition and reply have been submitted.

## BACKGROUND

The facts recited herein, taken from the amended complaint, are presumed to be true for the purposes of this motion to dismiss (*see Leon v Martinez*, 84 NY2d 83 [1994]).

Plaintiff is a New York not-for-profit corporation which operates hospitals and healthcare facilities (*see* NYSCEF Doc. No. 12). Plaintiff has an in-network provider agreement (hereinafter

-1-

PA) with Empire Blue Cross and Blue Shield (hereinafter Empire)(*see id.*). Empire is a member of the Blue Cross and Blue Shield Association (hereinafter BCBSA), a national association of 34 independent community-based and locally operated Blue Cross Blue Shield companies (referred to herein as a BCBSA member company)(*see id.*).

Defendant is also a BCBSA member company (*see id.*). Each BCBSA member company is required to execute a Member License agreement with the BCBSA, which requires, inter alia, that each BCBSA Member company participate in the BlueCard Program (*see id.*). Under the BlueCard program, when a healthcare provider, such as plaintiff, treats a member of a BCBSA Member company from a different geographical service area, the healthcare provider submits the claim to the BCBSA member company operating within the geographical area where the care was rendered, i.e., the Host Plan (*see id.*). The Host Plan then submits the claim to the BCBSA member company that insured the patient, i.e., the Home Plan (*see id.*). The Home Plan reviews the claim, and sends a disposition to the Host Plan, which in turn is responsible for reimbursing the health care provider (*see id.*).

The PA entered into between plaintiff and Empire included provisions relating to the BlueCard Program, which, inter alia, required plaintiff to provide healthcare services to those patients who were "subscribers of other Blue Cross and/or Blue Shield Plans or their affiliates or subsidiaries" at "the rates described in the [PA]" (*id.*). The PA further provided that "all Payers (as defined below) shall be entitled to access the services of [plaintiff] Providers that participate in the Empire network" (*id.*). "Payers" were defined to include "any plans affiliated with [BSBSA] or their subsidiaries or affiliates" (*id.*). The Payers were "bound by the applicable rates and all other applicable terms of [the PA]," and were "legally responsible for payment of Covered Services under the terms of the applicable benefit plan," including "BlueCard Plans with respect to any such BlueCard Plans' fully insured business" (*id.*).

Plaintiff treated patients who presented insurance cards which identified defendant as the out-of-state BlueCard insurer responsible for the payment of the claim for the healthcare services provided to that patient (*see id.*). Plaintiff timely submitted to Empire separate statements of its billed charges for the healthcare it provided to each of those patients, which totaled $227,177.11 (*see id.*). Empire, as the Host Plan, submitted the billed charges to defendant as the Home Plan (*see id.*).

-2-

After defendant made a determination on plaintiff's claim, defendant issued an explanation of benefits to the insured and transmitted a claim payment disposition to Empire (*see id.*). Plaintiff was paid a portion of the billed charges in the amount of $85,251.22 (*see id.*). Plaintiff contends that after adjusting the billed charges consistent with the in-network rates in the PA, and thereafter subtracting the payments that it received, the amount it is still owed is $280,379.58[1] (*see id.*).

After its administrative appeals were denied, plaintiff commenced this action, asserting causes of action to recover damages for breach of contract, breach of a third-party beneficiary contract, and under the quasi-contract grounds of unjust enrichment and quantum meruit. Defendant moved pre-answer, pursuant to CPLR 3211(a)(1), (3), (7), (8), and (10), to dismiss the complaint contending, inter alia, that the Court lacked personal jurisdiction over it. In response, plaintiff filed the amended complaint. Defendant now moves to dismiss the amended complaint on the same bases, contending that the amended complaint suffers from the same deficiencies as the original complaint, and needs to be dismissed since, inter alia, plaintiff sued the wrong party in the wrong jurisdiction.

## DISCUSSION

CPLR 3211(a)(8): Personal jurisdiction

Defendant contends that the Court does not have general jurisdiction over it since plaintiff admits in the amended complaint that defendant is incorporated in Arizona and has its principal place of business in Arizona, and the Court does not have specific jurisdiction over it since it does not transact business in New York. Defendant further argues that it is not subject to personal jurisdiction based on a forum selection clause in the PA because such a clause cannot be enforced against a nonsignatory to the agreement. Defendant contends that it is not subject to jurisdiction simply because it participates in the national BlueCard program, and the assertion of jurisdiction over it would be inconsistent with due process.

Plaintiff opposes the motion, arguing that the forum selection clause is dispositive and binds defendant even though it is a nonsignatory. Moreover, plaintiff contends that the Court has specific jurisdiction over defendant based on the actions taken by its agent, Empire. In addition, plaintiff

---

[1] Plaintiff does not provide an explanation as to how it arrived at this amount.

argues that defendant injected itself into the New York economy by issuing policies it knew insured New York residents and from which defendant derived substantial premium income. Plaintiff further requests, if necessary to defeat the motion, discovery on defendant's business transactions and contacts in New York.

CPLR 3211(a)(8) permits a court to dismiss an action for lack of personal jurisdiction. "When a defendant objects to the court's exercise of personal jurisdiction, the ultimate burden of proof rests upon the plaintiff" (*Lowy v Chalkable, LLC*, 186 AD3d 590, 591 [2d Dept 2020]). However, "[w]hen opposing a motion to dismiss the complaint pursuant to CPLR 3211(a)(8) on the ground of lack of jurisdiction, a plaintiff need only make a prima facie showing that personal jurisdiction over the moving defendant exists" (*Fanelli v Latman*, 202 AD3d 758, 759 [2d Dept 2022] [internal quotation marks omitted]). "The facts alleged in the complaint and affidavits in opposition to such a motion to dismiss are deemed true and construed in the light most favorable to the plaintiff, and all doubts are to be resolved in favor of the plaintiff" (*Nick v Schneider*, 150 AD3d 1250, 1251 [2d Dept 2017]; *see Greenfader v Cicago School of Professional Psychology*, 222 AD3d 845, 846 [2d Dept 2023]).

Forum selection clause

Plaintiff contends that defendant is subject to the jurisdiction of the Court because it consented to jurisdiction due to a forum selection clause in the PA[2]. "[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court through a forum selection clause. This is the case even where a party lacks sufficient minimum contacts with the forum state" (*P.S. Fin., LLC v Eureka Woodworks, Inc.*, 214 AD3d 1, 17 [2d Dept 2023][citations and internal quotation marks omitted]). "[W]here a defendant enters into an agreement containing a forum selection clause, it is not necessary to conduct a separate analysis of whether the exercise of personal jurisdiction over the defendant comports with constitutional requirements of due process" (*id.*).

The proponent of a such a clause must demonstrate the existence and terms of a contractual forum selection clause, and must also demonstrate, prima facie, that it is enforceable against the other party (*see Sherrod v Mount Sinai St. Luke's*, 204 AD3d 1053, 1055 [2d Dept 2022]). "As a general matter, only parties in privity of contract may enforce terms of the contract such as a forum

---

[2] The Provider Agreement has not been provided to the Court.

selection clause found within the agreement" (*Sherrod v Mount Sinai St. Luke's*, 204 AD3d at 1056 [internal quotation marks omitted]). "Accordingly, unless a recognized exception applies, the 'general rule' is that 'a forum selection clause may not be enforced against a nonsignatory'" (*Sherrod v Mount Sinai St. Luke's*, 204 AD3d at 1056, quoting *Lantau Holdings Ltd. v Orient Equal Intl. Group Ltd.*, 161 AD3d 714 [1st Dept 2018]). There are three sets of circumstances where a nonsignatory can enforce a forum selection clause: (1) a third-party beneficiary of the contract may enforce a forum selection clause; (2) parties to an integrated, global transaction, who are not signatories to a specific agreement within the transaction, may nonetheless benefit from a forum selection clause in one of the other agreements; and (3) a nonparty that is "closely related" to one of the signatories can enforce a forum selection clause (*see P.S. Fin., LLC v Eureka Woodworks, Inc.*, 214 AD3d at 18; *Tate & Lyle Ingredients Americas, Inc. v Whitefox Tech. USA, Inc.*, 98 AD3d 401, 401 [1st Dept 2012]).

Plaintiff claims that defendant can be bound by the forum selection clause because it received a "direct benefit" from a contract containing the clause, and under the "closely related" exception. While receiving a direct benefit may be a consideration under the closely related doctrine, it does not, standing alone, bind a nonsignatory to a forum selection clause (*see Freeford Ltd. v Pendleton*, 53 AD3d 32, 38-39 [1st Dept 2008]). "Under the 'closely related' doctrine, a forum selection clause may . . . be enforced against a non-signatory, 'where the non-signatory and a party to the agreement have such a "close relationship" that it is foreseeable that the forum selection clause will be enforced against the non-signatory'" (*Sutton v Houllou*, 191 AD3d 1031, 1034 [2d Dept 2021], quoting *Highland Crusader Offshore Partners, L.P. v Targeted Delivery Tech. Holdings, Ltd.*, 184 AD3d 116, 122 [1st Dept 2020]).

Here, plaintiff alleges in the amended complaint that the PA "contains a forum selection clause which requires that any action brought pursuant to the [PA] be brought and tried in a court of competent jurisdiction in New York"; and "Defendant is bound by the terms of the [PA] and therefore, is bound by the forum selection clause and has consented to jurisdiction in this forum." The amended complaint does not allege facts that would establish such a close relationship between Empire and defendant that it would be foreseeable that the forum selection clause would be enforced against defendant, a nonsignatory to the PA. Rather, plaintiff describes the two as independent

-5-

companies acting pursuant to separate licensing agreements each signed with BCBSA. Accordingly, even construing the allegations in the light most favorable to plaintiff, the amended complaint does not allege sufficient facts to establish that defendant has such a close relationship with Empire that it was foreseeable that the forum selection clause would be enforced against them (*cf. Sutton v Houllou*, 191 AD3d at 1034), and thus, it cannot be said that defendant has consented to jurisdiction.

General jurisdiction under CPLR 301

"Under modern jurisprudence, a court may assert general all-purpose jurisdiction or specific conduct-linked jurisdiction over a particular defendant" (*Aybar v Aybar*, 169 AD3d 137, 142-143 [2d Dept 2019], *affd*, 37 NY3d 274 [2021]). A court may exercise general jurisdiction pursuant to CPLR 301 over a defendant only if the defendant is domiciled in New York or if the defendant's contacts with New York "are so continuous and systematic as to render [it] essentially at home in the forum State" (*Goodyear Dunlop Tires Operations, S.A. v Brown*, 564 US 915, 919 [2011] [internal quotation marks omitted]). As defendant contends, and plaintiff does not dispute, the amended complaint acknowledges that defendant is an out-of-state corporation that is organized and existing pursuant to the laws of the State of Arizona; has its principal place of business in Phoenix; and that the exclusive geographical area served by defendant is Arizona (*see* NYSCEF Doc. No. 12). Moreover, the amended complaint does not allege that defendant's contacts with New York are so continuous and systematic as to render it essentially at home in New York. Thus, the amended complaint does not demonstrate personal jurisdiction over defendant under New York's general jurisdiction statute (*see Fanelli v Latman*, 202 AD3d at 759).

Specific jurisdiction under CPLR 302

"Specific jurisdiction over a defendant is obtained through New York's long-arm statute, CPLR 302" (*Fanelli v Latman*, 202 AD3d at 759), which provides, in relevant part, that New York courts may exercise personal jurisdiction over "any nondomiciliary, . . ., who in person or through an agent, transacts any business within the state or contracts anywhere to supply goods or services in the state" (CPLR 302[a][1]). "The CPLR 302(a)(1) jurisdictional inquiry is twofold: under the first prong the defendant must have conducted sufficient activities to have transacted business in the state, and under the second prong, the claims must arise from the transactions" (*Rushaid v Pictet & Cie*, 28 NY3d 316, 323 [2016]). "The sufficient activities prong is met even though the defendant

-6-

never enters New York, so long as the defendant's activities here were purposeful" (*Fanelli v Latman*, 202 AD3d at 760 [internal quotation marks omitted]). "Purposeful activities are those with which a defendant, through volitional acts, 'avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws'" (*Fischbarg v Doucet*, 9 NY3d 375, 380 [2007], quoting *McKee Elec. Co. v Rauland-Borg Corp.*, 20 NY2d 377, 382 [1967]).

In opposition, plaintiff contends that defendant engaged in purposeful activities in New York when it caused Empire, as its agent, to grant it contractual access to plaintiff's in-network services and rates as part of the BlueCard program. According to plaintiff, defendant's purposeful conduct outside of New York, and the purposeful conduct of its agent in New York, injected defendant into the New York-centric PA. However, in cases involving the BlueCard program, courts have repeatedly found "merely providing out-of-state health coverage to insureds does not subject an insurer to personal jurisdiction in every foreign state in which an insured happens to obtain medical services" (*St. Luke's Episcopal Hosp. v Louisiana Health Serv. & Indem. Co.*, CIV.A. H-08-1870, 2009 WL 47125, at *8 [SD Tex Jan. 6, 2009]; *see Craig Hosp. v Empire Healthchoice, Inc.*, 18-CV-00794-WYD-STV, 2019 WL 10258608, at *4 [D Colo Apr. 1, 2019] [collecting cases]; *Choice Healthcare, Inc. v Kaiser Found. Health Plan of Colo.*, 615 F3d 364, 370 [5th Cir 2010]). In *St. Luke's Episcopal Hosp.*, the District Court for the Southern District of Texas determined that participation in the BlueCard program by Blue Cross and Blue Shield of Louisiana (hereinafter BCBSLA) was insufficient to confer jurisdiction because "BCBSLA had not contracted directly with a Texas entity but instead ha[d] joined a national organization that allow[ed] it to obtain coverage and processing in all of the Blue Card Program members' states" (*St. Luke's Episcopal Hosp. v Louisiana Health Serv. & Indem. Co.*, CIV.A. H-08-1870, 2009 WL 47125, at *8-9).

Plaintiff, however, argues that defendant, and other BCBSA members, were found to be subject to personal jurisdiction in a similar case *In re Blue Cross Blue Shield Antitrust Litig.* (225 F Supp 3d 1269, 1296 [ND Ala 2016]). However, that case did not involve an insurance coverage dispute, but rather, involved a putative class action brought by healthcare providers and subscribers alleging that certain BCBSA member companies conspired to restrain trade in violation of the Sherman Act. Therein, the defendants were found to be subject to the court's personal jurisdiction

-7-

under section 12 of the Clayton Act because they transacted business in the district. The District Court distinguished *St. Luke's Episcopal Hosp. v Louisiana Health Serv. & Indem. Co.* and *Choice Healthcare, Inc. v Kaiser Found. Health Plan of Colo.*, since unlike those cases where the only contacts involved the insurer's participation in the BlueCard program, which the Court acknowledged were insufficient, the plaintiffs in the antitrust litigation had demonstrated that the defendants had sufficient minimum contracts with Alabama. The plaintiffs therein demonstrated that the defendants did more than just pay claims from Alabama health care providers through the BlueCard Program, and showed that the defendants agreed to provide health insurance to group plans that included employees who resided in multiple states, including Alabama, and that the defendants knew the addresses of many applicants to their health plans before they agreed to establish a group plan.

Here, in the amended complaint, plaintiff alleges that all but two of the patients who received the healthcare services at issue reside in New York. However, the claims in the amended complaint arise only from defendant's contract to provide health insurance as part of the BlueCard Program (*cf. In re Blue Cross Blue Shield Antitrust Litig.*, 225 F Supp 3d at 1311). As such, plaintiff has not alleged that defendant has sufficient minimum contacts with New York for this Court to exercise personal jurisdiction over it pursuant to CPLR 302(a)(1).

Despite plaintiff's request, it has not demonstrated that facts may exist requiring discovery on the issue of personal jurisdiction so as to postpone resolution of the issue (*see Fanelli v Latman*, 202 AD3d at 761). Accordingly, that branch of defendant's motion which is pursuant to CPLR 3211(a)(8) to dismiss the amended complaint is granted.

In light of the foregoing, there is no need for the Court to consider the remaining branches of defendant's motion which seek dismissal of the amended complaint on other CPLR 3211(a) grounds.

Accordingly, it is

**ORDERED** that the branch of defendant's motion which is pursuant to CPLR 3211(a)(8) to dismiss the amended complaint for lack of personal jurisdiction is **GRANTED**; and it is further,

**ORDERED** that all requests for relief not specifically addressed herein are **DENIED**.

This constitutes the Decision and Order of the Court.

Dated: Mineola, New York
March 6, 2024

ENTER:

_____
JEROME C. MURPHY, J.S.C.

**ENTERED**
Mar 08 2024
NASSAU COUNTY
COUNTY CLERK'S OFFICE