**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Northwell Health, Inc., <br><br>                 Plaintiff, <br><br>       -v- <br><br> Blue Cross and Blue Shield of Massachusetts, Inc., <br><br>            Defendant. | 2:23-cv-00977 <br> (NJC)(AYS) |

**<u>OPINION AND ORDER</u>**

NUSRAT J. CHOUDHURY, District Judge:

      Plaintiff Northwell Health, Inc. ("Northwell") brings this action against Defendant Blue Cross and Blue Shield of Massachusetts, Inc. ("Blue Cross Massachusetts") under New York law for breach of contract, breach of a third-party beneficiary contract, and, in the alternative, for unjust enrichment and quantum meruit over Blue Cross Massachusetts's alleged failure to reimburse Northwell for healthcare services provided to patients insured by Blue Cross Massachusetts. (*See generally* Am. Compl., ECF No. 12.) Before the Court is Blue Cross Massachusetts's Motion to Dismiss the Amended Complaint with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). (Mot., ECF No. 19.) For the following reasons, the Court grants the Motion.

## BACKGROUND[1]

Northwell is a New York hospital system and an in-network provider for Empire Blue Cross and Blue Shield ("Empire"), an insurance company that operates exclusively in New York. (Am. Compl. ¶¶ 1, 10, 19.) Blue Cross Massachusetts is an insurance company that operates exclusively in Massachusetts. (*Id.* ¶ 10.)

Both Blue Cross Massachusetts and Empire are licensees of the Blue Cross and Blue Shield Association (the "Association") and members of the BlueCard Program. (*Id.* ¶¶ 10, 11, 17.) The BlueCard Program is a national network of Blue Cross Blue Shield member companies. (*Id.* ¶ 9.) Through the BlueCard Program, patients insured by a member company can receive coverage for healthcare services from an in-network provider of another BlueCard Program member. (*Id.* ¶ 14.) In this case, patients insured by Blue Cross Massachusetts can receive coverage for healthcare services in New York from Empire's in-network providers, including Northwell, through the BlueCard Program. (*See id.*) The Association requires that each member execute a License Agreement in which the member agrees to (1) "effectively and efficiently" participate in the BlueCard Program to "provid[e] portability of membership between"

---

[1] The following facts are taken from Northwell's Amended Complaint and the agreements between Northwell and Empire Blue Cross and Blue Shield attached to the parties' briefing on the Motion to Dismiss: the Participating Hospital Health Maintenance Organization Agreement (Kadosh Decl. Ex. C, ECF No. 21-3); the Participating Hospital Preferred Provider Organization/Indemnity Agreement (Kadosh Decl. Ex. A, ECF No. 21-1); the Participating Practitioner Group Agreement (Kadosh Decl. Ex. B, ECF No. 21-2); the 2008 amendment to the Hospital HMO and Hospital PPO Agreements (McBride Decl. Ex. A, ECF No. 23); and the 2014 amendment to the Hospital HMO Agreement, Hospital PPO Agreement, 2008 Amendment, and Practitioner Agreement (Kadosh Reply Decl. Ex. A, ECF No. 25-1). The Court properly considers these agreements on a Motion to Dismiss because they are "integral" to the Amended Complaint, which "relies heavily upon [their] terms and effect." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quotation marks omitted).

participants and easy claims processing, and (2) "ensure [their] financial performance in programs and contracts" between participating members. (*Id.* ¶ 11, 13.)

The parties have submitted five contracts (the "Empire Agreements") that set out the relationship between Northwell and Empire. First, effective January 1, 2000, Northwell entered into two agreements with Empire: (1) a Participating Hospital Health Maintenance Organization Agreement ("Hospital HMO Agreement") (Kadosh Decl. Ex. C, ECF No. 21-3), and (2) a Participating Hospital Preferred Provider Organization/Indemnity Agreement ("Hospital PPO Agreement") (Kadosh Decl. Ex A, ECF No. 21-1) (collectively "Hospital Agreements"). Blue Cross Massachusetts contends, and Northwell does not dispute, that the Hospital HMO Agreement and the Hospital PPO Agreement are materially identical for the purposes of this motion. (Def.'s Mem. ISO Mot. to Dismiss ("Mem.") at 4, ECF No. 20; *see also* Pl.'s Mem. in Opp'n ("Opp'n Br."), ECF No. 22.) The Hospital Agreements establish that Northwell is an in-network provider for Empire and set out the rates at which Empire will pay Northwell for healthcare provided to patients insured by Empire.



The Hospital Agreements were amended in 2008 ("2008 Amendment") (McBride Decl. Ex. A, ECF No. 23) and 2014 ("2014 Amendment") (Kadosh Decl. Ex. A, ECF No. 25-1).

The Hospital Agreements include the following terms, which conform to Empire's obligations under the BlueCard Program (the "BlueCard Terms"). First, the Hospital Agreements require that Northwell provide healthcare services to patients insured by other BlueCard Program members at the rates set out in the Empire Agreements.[2] ███████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████ And second, the Hospital Agreements set out the procedure by which Northwell submits claims to Empire for reimbursement. ████████████ ████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████ If Northwell disagrees with those payments, it may dispute them with Empire pursuant to the Dispute Resolution Process attached to the Hospital Agreements. ██ ██ ████

The third relevant agreement is the Participating Practitioner Group Agreement ("Practitioner Agreement"), effective January 1, 2008. (Practitioner Agreement at 1, Kadosh Decl. Ex. B, ECF No. 21-2.) █████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████ Like the Hospital Agreements, the Practitioner Agreement establishes that Northwell's providers agree to supply healthcare to patients insured by Empire at the rates and terms set out in the agreement. ████████████████████████████████████

---

[2] The 2008 Amendment and the 2014 Amendment set out updated rates; those contracts govern over conflicting terms of the Hospital Agreements. (*See generally* 2008 Amendment; 2014 Amendment.)

████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████

The Practitioner Agreement also contains terms that conform to Empire's obligations

under the BlueCard Program. ████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████

The fourth agreement is the 2008 Amendment to the Hospital Agreements, effective

January 1, 2008. (2008 Amendment at 1.) ██████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████

Northwell asserts that this definition means that a home plan—here, Blue Cross Massachusetts—

is the "Payer" that is legally obligated to pay Northwell for healthcare provided to the home

plan's insured patients. (Am. Compl. ¶ 33.)

The fifth agreement is the 2014 Amendment to the Hospital Agreements and the

Practitioner Agreement. (2014 Amendment.) The 2014 Amendment controls over any conflicting

terms in the Hospital Agreements, the 2008 Amendment, and the Practitioner Agreement. (*Id.* at 2.)

Northwell timely submitted claims totaling $11,334,659.49 to Empire for services provided to patients insured by Blue Cross Massachusetts from January 1, 2019, through December 31, 2022. (Am. Compl. ¶¶ 5, 28.) Taking adjustments and prior payments into account, Northwell alleges that Blue Cross Massachusetts still owes $2,127,062.85, plus interest. (*Id.* ¶ 38.) Northwell has filed timely appeals of each of Blue Cross Massachusetts's claim determinations pursuant to Empire's instructions regarding the method, timing, and receipt of appeals. (*Id.* ¶ 36.) Blue Cross Massachusetts has not determined those appeals within the timeframe set out in the Hospital Agreements. (*Id.* ¶ 37.)

## PROCEDURAL HISTORY

On December 29, 2022, Northwell initiated this case in the Supreme Court of Nassau County. (Not. of Removal ¶ 1, ECF No. 1.) On February 7, 2023, Blue Cross Massachusetts removed this case from state court. (*See id.*) On February 27, 2023, Northwell filed the first complaint in this action. (ECF No. 7.) On April 27, 2023, Blue Cross Massachusetts filed a letter requesting a pre-motion conference on its anticipated motion to dismiss the complaint. (ECF No. 9.) On May 4, 2023, Northwell filed a response. (ECF No. 10.) On May 18, 2023, Northwell filed the Amended Complaint. (Am. Compl.)

On June 8, 2023, Blue Cross Massachusetts filed a letter requesting a pre-motion conference on its anticipated motion to dismiss the Amended Complaint. (ECF No. 16.) On June 15, 2023, Northwell responded. (ECF No. 17.) On July 20, 2023, I waived the pre-motion conference requirement and the parties began briefing the Motion. (Elec. Order, July 20, 2023.) On December 5, 2023, Blue Cross Massachusetts filed the fully-briefed Motion. In support of its

motion, Blue Cross Massachusetts filed a memorandum of law (Mem., ECF No. 20), the Kadosh Declaration (Kadosh Decl., ECF No. 21), the Hospital Agreements (ECF Nos. 21-1, 21-3), the Practitioner Agreement (ECF No. 21-2), a reply brief (Reply, ECF No. 24), the Kadosh Reply Declaration (Kadosh Reply Decl., ECF No. 25), and the 2014 Amendment (ECF No. 25-1). In opposition, Northwell submitted a brief (Opp'n), the McBride Declaration (McBride Decl., ECF No. 23), and the 2008 Amendment (McBride Decl. Ex. A, ECF No. 23). That same day, Blue Cross Massachusetts also filed a joint motion to seal the Motion to Dismiss moving papers and exhibits. (ECF No. 26.)

On March 4, 2024, Northwell filed a notice of supplemental authority, attaching a February 28, 2024 decision of the New York Supreme Court for Nassau County in *Northwell Health, Inc. v. Blue Cross & Blue Shield R.I.*, Index No. 618232/2022 (the "Rhode Island Decision"). (ECF No. 29.) On March 8, 2024, Blue Cross Massachusetts filed a notice of supplemental authority, attaching a March 6, 2024 decision of the New York Supreme Court for Nassau County in *Northwell Health, Inc. v. Blue Cross & Blue Shield of Ariz., Inc.*, Index No. 618430/2022 (the "Arizona Decision"). (ECF No. 30.) Northwell responded to Blue Cross Massachusetts's notice on March 11, 2024. (ECF No. 31.) On April 2, 2024, Northwell filed a second notice of supplemental authority, purporting but failing to attach a March 29, 2024 decision of the New York Supreme Court for Nassau County in *Northwell Health, Inc. v. Blue Cross and Blue Shield of N.C.*, Index No. 618457/2022 (the "North Carolina Decision").

On July 17, 2024, I granted the joint motion to seal and ordered Blue Cross Massachusetts to file unredacted copies of the parties' legal memoranda supporting and opposing the Motion to Dismiss on the public docket. (Elec. Order, July 17, 2024.)

## JURISDICTION

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000. Here, Northwell is a New York entity seeking $2,127,062.85, plus interest from Blue Cross Massachusetts, a Massachusetts entity. (Am. Compl. ¶¶ 1–2, 38.)

Blue Cross Massachusetts does not raise a personal jurisdiction defense under Rule 12(b)(2), and such a defense is therefore waived. *See* Fed. R. Civ. P. 12(b) ("A motion asserting [a Rule 12(b)(2) defense] must be made before pleading if a responsive pleading is allowed."); Fed. R. Civ. P. 12(h)(1)(B) ("A party waives any defense listed in Rule 12(b)(2) . . . [by] failing to . . . make it by motion under this rule.") Venue is proper under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965 because a substantial part of the events or omissions giving rise to this action occurred in this judicial district, where Northwell's principal place of business is located.

## STANDARDS OF REVIEW

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1076–77 (2d Cir. 2021) (quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In determining if a claim is sufficiently plausible to withstand dismissal" under Rule 12(b)(6), a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs." *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021) (citation and quotation marks omitted). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester County*, 3 F.4th 86, 91 (2d Cir. 2021) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

8

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord We The Patriots USA, Inc. v. Connecticut Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023). While "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alterations omitted).

## DISCUSSION

### I.    Breach of Contract Claim

The first claim in the Amended Complaint is for breach of contract under New York law. Northwell argues that Blue Cross Massachusetts breached its obligation to reimburse Northwell at the rates set out in the Hospital Agreements and that this obligation to Northwell arose out of the License Agreement between Blue Cross Massachusetts and the Association and the Hospital Agreements between Empire and Northwell. (Am. Compl. ¶¶ 41–42, 50–52.)

Blue Cross Massachusetts argues that Northwell's breach of contract claim fails for three reasons. First, no contract binds Blue Cross Massachusetts to Northwell and there is no privity between them. (Mem. at 11–12.) Second, Empire's conduct does not render Blue Cross Massachusetts liable for breach of the Empire Agreements. (*Id.* at 13–16.) Third, Northwell has not exhausted its remedies under the Hospital Agreements. (*Id.* at 16–17.)

Northwell advances two principal arguments in support of its contention that Blue Cross Massachusetts is liable for an alleged breach of the Hospital Agreements. (Opp'n at 4–13.) First, Northwell argues that under the 2008 Amendment, Blue Cross Massachusetts is the sole payer

obligated to pay Northwell's claims. (*Id.* at 4–7.) Second, Northwell argues that Blue Cross Massachusetts is not required to have signed the Hospital Agreements in order to be bound by them for several reasons: (1) Empire acted as Blue Cross Massachusetts's agent in signing the Hospital Agreements, (2) there is functional privity between Northwell and Blue Cross Massachusetts in light of Empire's acting as Blue Cross Massachusetts's agent in signing the Hospital Agreements, (3) other documents—namely the agreements relating to the Association and BlueCard Program—show Blue Cross Massachusetts's liability for activity covered by the Hospital Agreements, and (4) Blue Cross Massachusetts manifested its intent to be bound by the Hospital Agreements. (*Id.* at 7–13.)

As discussed below, none of Northwell's arguments is persuasive. The Amended Complaint fails to plausibly allege that Blue Cross Massachusetts is liable for breach of the Hospital Agreements, therefore, I dismiss Northwell's breach of contract claim.

A. The Existence of Contractual Privity Between Northwell and Blue Cross Massachusetts is Implausible

"Under New York law, it is well established that—with few exceptions—a breach of contract claim cannot be maintained against a party who is not a signatory to the underlying agreement, and not in privity with a contracting party." *Reza v. Khatun*, No. 09-CV-233 (MKB), 2017 WL 11700559, at *4 (E.D.N.Y. Dec. 22, 2017). Here, the parties do not dispute that Blue Cross Massachusetts is not a signatory to the Hospital Agreements. Northwell nevertheless maintains that it is in contractual privity with Blue Cross Massachusetts via a series of "'links' or interlocking relationships, intentionally arising through the BlueCard Program, between and among all of the [Association] Member companies, and each participating provider of every other Association Member company." (Am. Compl. ¶ 42.) More specifically, Northwell argues that Blue Cross Massachusetts is liable for breach of the Hospital Agreements because the 2008

Amendment designates Blue Cross Massachusetts as the "sole entity" responsible for reimbursing Northwell for healthcare provided to Blue Cross Massachusetts's insureds. (Opp'n at 4–7.)

Northwell's argument relies on Section III.h of the 2008 Amendment, which provides:



Northwell argues that because a BlueCard Program member is a "Payer" for any claims on behalf of patients it insures, Blue Cross Massachusetts is the sole "Payer" legally obligated to pay Northwell for healthcare provided to the patients it insures.[3] (*See, e.g.*, Opp'n at 2.)

---

[3] Northwell's opposition brief asserts that "Payers" are "bound by the applicable rates and all other applicable terms of the" Hospital Agreements. (Opp'n at 5.) In support, Northwell cites the Amended Complaint, as it does throughout its opposition, rather than the specific provisions of the Hospital Agreements submitted by Blue Cross Massachusetts. (*Id.*) It appears that Northwell is quoting from the Practitioner Agreement—an agreement Northwell did not specifically identify in its Amended Complaint—which states that ███████████████████████████ ███████████████████████ The Practitioner Agreement defines ████████████████ ██████████████████████ Because the definition of a "provider" in the Practitioner Agreement is different from the definition of "Payers" in Section III.h of the 2008 Amendment, it is inaccurate, at best, for Northwell to argue that this provision means that Blue Cross Massachusetts is "bound by the applicable rates and all other applicable terms" of the Hospital Agreements and, therefore, legally responsible for paying Northwell for healthcare provided to patients insured by Blue Cross Massachusetts.

This argument is unpersuasive for three reasons. First, the definition of "Payer" in the 2008 Amendment does not displace or alter the payment structure set up in the Hospital Agreements, restated in the Practitioner Agreement (which was contemporary to the 2008 Amendment) and preserved in the 2008 and 2014 Amendments. The Hospital Agreements provide that Northwell ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████ Nothing in the 2008 Amendment expressly alters or displaces this payment structure. And the 2014 Amendment, which affects the Hospital Agreements, the 2008 Amendment, and the Practitioner Agreement, also preserves the payment structure by providing that Empire and Northwell ██ ████████████████████████████████████████████ ████████████████████████████████

Second, Northwell cannot use the definition of "Payer" in Section III.h of the 2008 Amendment to hold Blue Cross Massachusetts liable for breach of that document or the other Empire Agreements. ████████████████████████████████████ ████████████████████████████████████ not under the terms of the Hospital Agreements. ████████████████████████████ In other words, ██████ ████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████. Although Blue Cross

Massachusetts may be legally obligated to pay Empire for payments that Empire makes to

Northwell for services rendered to patients insured by Blue Cross Massachusetts, that does not

mean that Blue Cross Massachusetts is in privity of contract with Northwell.

Third, as Blue Cross Massachusetts rightly points out, it is not plausible that two

sophisticated entities such as the parties in this action would agree to be bound to terms they did

not negotiate or sign, and which could be amended without their consent. (Mem. at 12.) Under

Northwell's interpretation of the Hospital Agreements, any in-network provider for any

BlueCard Program member anywhere in the country could hold any other BlueCard Program

member liable for payments under a provider agreement that it did not negotiate and to which it

did not consent. This interpretation would subject BlueCard Program members to unforeseeable

obligations to other members' in-network providers across the country. It is not plausible that

Empire and Northwell intended this result when they drafted and signed the Empire Agreements.

Northwell relies on two authorities to support its argument that Blue Cross Massachusetts

as the home plan—not Empire as the host plan—is the party legally responsible for paying

Northwell for services rendered to patients insured by Blue Cross Massachusetts: an Internal

Revenue Service ("IRS") memorandum, 2013 IRS NSAR 3701F, 2013 WL 10257206, and

*Highmark, Inc. v. United States*, 161 Fed. Cl. 240 (2022). (*See* Opp'n at 6–7, 12.) Northwell

points to language in *Highmark* stating that a host plan (i.e., Empire) incurs no legal obligation to

pay the provider and does not participate in disputes between the home plan and provider. (*Id.* at

6.) But *Highmark* was a tax refund case in which the court considered whether "[Blue Cross

Blue Shield] companies like Highmark may include reimbursed Host Plan payments to their

13

network providers in calculating the [26 U.S.C. § 833(b)] special deduction on their annual federal income tax returns." *Highmark*, 161 Fed. Cl. at 244–45. The court engaged in statutory interpretation to hold that Highmark could not include reimbursements received from home plans in its special deduction. *Id.* at 241–49. The court did not consider a particular provider agreement with a host plan, such as the Hospital Agreements between Northwell and Empire, or whether such an agreement binds a home plan even though the latter entity did not negotiate or sign that agreement. As a result, *Highmark* does not support Northwell's argument that Blue Cross Massachusetts can be liable for breach of the Hospital Agreements.

The IRS memo also dealt with whether transactions by a host plan are properly included in the calculation of the host plan's 26 U.S.C. § 833(b) special deduction. 2013 IRS Non-Docketed, 2013 WL 10257206, at 3–4. Northwell argues that Blue Cross Massachusetts is obligated to pay Northwell for providing healthcare to patients insured by Blue Cross Massachusetts because the IRS memo concludes that a home plan, not a host plan, incurs liability to pay a provider for healthcare services for its patients. (Opp'n at 12.) But the IRS memo actually supports Blue Cross Massachusetts because the provider contracts discussed in the memo—like the Empire Agreements—state that the provider agrees to look only to the host plan for payment, to not pursue collection against the home plan or other BlueCard Program members, and to handle all disputes through the host plan. 2013 IRS Non-Docketed, 2013 WL 10257206, at 10. As a result, the IRS memo does not support Northwell's argument that Blue Cross Massachusetts can be liable for breach of the Hospital Agreements.

The supplemental authority submitted by the parties supports the conclusion that the Amended Complaint fails to state a plausible breach of contract claim. All three decisions arise in lawsuits brought by Northwell against BlueCard member home plans involving motions to

dismiss the same claims as those alleged here. (*See Blue Cross & Blue Shield of N.C.*, Index No. 618457/2022, at 1 (N.Y. Sup. Ct. Mar. 29, 2024); *Blue Cross & Blue Shield of Ariz., Inc.*, Index No. 618430/2022 at 1, 3 (N.Y. Sup. Ct. Mar. 6, 2024) (ECF No. 30); *Blue Cross & Blue Shield R.I.*, Index No. 618232/2022 at 1, 3–4 (N.Y. Sup. Ct. Feb. 28, 2024) (ECF No. 29).) Although Northwell submitted the Rhode Island and North Carolina Decisions, they offer limited support for Northwell's Motion because the decisions do not explain why the court in those cases found Northwell's claims to be plausible. (*See, e.g.*, *Blue Cross & Blue Shield of N.C.*, Index No. 618457/2022 at 1 (finding certain of Northwell's breach of contract theories to be "facially viable . . . despite the fact that the parties [were] not in direct privity" but failing to explain why; *Blue Cross & Blue Shield R.I.*, Index No. 618232/2022 at 6 (denying the motion to dismiss given the factual disputes between the parties and the "particularly salient" presumption of truthfulness in this case "due to the complexity of the relationship between the parties and the regulatory scheme involving health care reimbursement.").) Accordingly, I cannot infer anything from those decisions that would support Northwell's position.

B. <u>No Exception to the Non-Signatory Rule Applies</u>

Despite the "well established" rule that a breach of contract claim cannot be maintained against a non-signatory to the underlying agreement, "[a] non-party to an agreement may nevertheless be held liable for an alleged breach when the non-party's relationship with the contracting party is 'so close as to approach that of privity.'" *Reza*, 2017 WL 11700559, at *4–5 (quoting *Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 424 (1989)). Northwell makes four arguments that Blue Cross Massachusetts and Empire's relationship is "so close as to approach that of privity." (Opp'n Br. at 7–16.) None of these arguments is persuasive.

1.  <u>The Amended Complaint Does Not Plausibly Allege an Agency Relationship</u>

First, Northwell argues that Empire acted as Blue Cross Massachusetts's agent in signing the Hospital Agreements. (Opp'n at 7–10.) According to Northwell, Blue Cross Massachusetts is bound by the Hospital Agreements because (1) the Amended Complaint alleges "that Empire was acting at the direction and subject to the control of" Blue Cross Massachusetts based on the allegations that Empire participated in the BlueCard Program by facilitating Blue Cross Massachusetts's claim processing and making payments to Northwell, and (2) Empire added the BlueCard Terms "at the direction of the other [Association] members." (*Id.* at 8.) Northwell further argues that Blue Cross Massachusetts manifested its intent to grant Empire actual authority to include the BlueCard Terms in the Hospital Agreements by participating in the BlueCard Program and by coordinating with Empire to process and pay Northwell's claims for treating Blue Cross Massachusetts's patients. (*Id.* at 8–9.) Northwell argues that these same allegations generate apparent authority because they give rise to the appearance that Empire had authority to include the BlueCard Terms on Blue Cross Massachusetts's behalf. (*Id.* at 9.) Northwell also argues that Blue Cross Massachusetts ratified Empire's conduct of serving as Blue Cross Massachusetts's agent by repeatedly accepting the benefits of the BlueCard Terms. (*Id.*)

Blue Cross Massachusetts contends that Northwell fails to plead the elements of an agency relationship because Northwell does not allege that Blue Cross Massachusetts directed Empire to enter the Hospital Agreements on its behalf or that Blue Cross Massachusetts was involved in negotiating the terms of the agreement or exercising any control over Empire. (Mem. at 13–16; Reply at 5.)

Under New York law, an agency relationship requires three elements: (1) the manifestation by the principal that the agent shall act on the principal's behalf; (2) the agent's

16

consent; and (3) the understanding of both parties that the principal is in control of the relationship. *Bailey v. City of New York*, 2024 WL 2947473, *2 (N.Y. App. Div. 2024) ("Agency is a legal relationship . . . which results from the manifestation of consent of one person to allow another to act on his or her behalf and subject to his or her control, and consent by the other so to act."). As to the third element of the test, "[a]n essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control." *Pan Am. World Airways, Inc. v. Shulman Transp. Enters., Inc.*, 744 F.2d 293, 295 (2d Cir. 1984); *St. Francis Holdings, LLC v. MMP Cap., Inc.*, No. 20-CV-4636 (MKB), 2022 WL 991980, at *10 (E.D.N.Y. Mar. 31, 2022) ("A principal's ability to exercise control over its agent is an essential element of agency.") (applying New York law).

Regarding the first element—the principal's manifestation that the agent shall act on the principal's behalf—courts consider whether the principal has vested the agent with "express, implied, or apparent authority" to bind the principal. *Bailey*, 2024 WL 2947473, *2 (quotation marks omitted). "[A]ctual authority exists where the principal has granted the agent the power to enter into contracts on the principal's behalf, subject to whatever limitations the principal places on this power, either explicitly or implicitly." *Ridge Clearing & Outsourcing Sols., Inc. v. Khashoggi*, No. 07 CIV. 6611 RJH, 2011 WL 3586455, at *7 (S.D.N.Y. Aug. 12, 2011) (quotation marks omitted) (citing *Ford v. Unity Hosp.*, 299 N.E.2d 659, 664 (N.Y.1973)), *aff'd sub nom. Broadridge Sec. Processing Sols., LLC v. Khashoggi*, 507 F. App'x 57 (2d Cir. 2013). Apparent authority exists when the "words or conduct of the principal, communicated to a third party, . . . give rise to the appearance and belief that the agent possesses authority to enter into a transaction." *Sherrod v. Mount Sinai St. Luke's*, 168 N.Y.S.3d 95, 102 (2022). Apparent authority requires a "factual showing" that the third party reasonably relied "upon the

17

misrepresentations of the agent because of some misleading conduct on the part of the principal—not the agent." *Id.*

An agent may bind its principal in the absence of express, implied, or apparent authority if the principal ratifies the agent's conduct. *See People by James v. N. Leasing Sys., Inc.*, 142 N.Y.S.3d 36, 43 (2021). "Ratification is the express or implied adoption of" the unauthorized acts of the agent by the principal with "full knowledge of the material facts." *Hempstead Realty, LLC v. Sturrup*, 2017 WL 2215747, at *5 (N.Y. Sup. Ct. 2017), *aff'd*, 144 N.Y.S.3d 440 (2021) (citing *Holm v C.M.P. Sheet Metal*, 455 N.Y.S. 2d 429, 432 (1982)). "It is well established that a principal cannot be deemed to have ratified the acts of his agent absent knowledge of those acts and an intent to ratify." *Robbins v. Tucker Anthony Inc.*, 649 N.Y.S.2d 856, 855 (1996). An implied ratification occurs when the principal's "subsequent conduct supports the . . . reasonable conclusion" that the principal has "accepted and adopted" the agent's actions. *In re Levy*, 893 N.Y.S.2d 142, 144 (2010) (quotation marks omitted). An example of implied ratification is retaining the benefits of, or failing to repudiate, the unauthorized transaction with knowledge of the material facts of the agreement. *Hempstead Realty*, 2017 WL 2215747, at *6.

Here, the Amended Complaint fails to plausibly allege any of the elements of an agency relationship. The sole allegation in the Amended Complaint regarding an agency relationship is that "Empire only makes the payment that [Blue Cross Massachusetts] determined should be made to Northwell as an agent for [Blue Cross Massachusetts]." (Am. Compl. ¶ 34.) The Amended Complaint does not allege that Blue Cross Massachusetts directed Empire to enter the Hospital Agreements on Blue Cross Massachusetts's behalf, nor that Empire accepted this undertaking, nor that both parties understood Blue Cross Massachusetts to be in control of Empire's signing of the Hospital Agreements. (*See generally* Am. Compl.) For example, the

Amended Complaint does not allege that Blue Cross Massachusetts directed Empire's

negotiation of the Hospital Agreements or the Practitioner Agreement, or expressly directed

Empire to agree to these contracts. To the contrary, the plain language of the Hospital

Agreements and the Practitioner Agreement states that ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████ Additionally, Blue Cross Massachusetts states that it did not participate in the negotiation

of the Hospital Agreements' terms or its amendments, that it had not seen the Agreements until

this litigation, and that its in-house counsel is still not permitted to view the Agreements because

they are designated "attorneys' eyes only" under the governing protective order. (Mem. at 2.) It

is therefore implausible that Empire signed the Hospital Agreements as Blue Cross

Massachusetts's agent.

 The crux of Northwell's agency argument is that Blue Cross Massachusetts and Empire's

mutual participation in the BlueCard Program is evidence that Empire was acting as Blue Cross

Massachusetts's agent subject to its control, and that Blue Cross Massachusetts manifested its

intent to confer authority on Empire to act as its agent or, in the alternative, conferred apparent

authority on Empire or ratified Empire's actions on its behalf. (Opp'n at 8–9.) This argument

confuses a fundamental fact: both Blue Cross Massachusetts and Empire mutually participate in

the BlueCard Program as separate, independent entities pursuant to the terms and payment

structure set out in their separate License Agreements with the Association and relevant provider

agreements. Against those facts, it is implausible that Blue Cross Massachusetts and Empire's

independent participation in the BlueCard Program: (1) manifested Blue Cross Massachusetts's intent that Empire bind it to the Hospital Agreements and the Practitioner Agreement as well as Empire's acceptance of its role as Blue Cross Massachusetts's agent, (2) gave rise to the reasonable belief by Northwell that Empire had authority to bind Blue Cross Massachusetts to the BlueCard Terms in the Hospital Agreements, or (3) constituted Blue Cross Massachusetts's ratification of Empire's actions on its behalf.

### 2. The Amended Complaint Does Not Plausibly Allege Functional Privity

Second, Northwell argues that Blue Cross Massachusetts is bound by the Hospital Agreements because the inclusion of the BlueCard Terms in those agreements created functional privity between Blue Cross Massachusetts and Empire. (*See* Opp'n at 10–11.) Northwell argues that it "reasonably understood" Blue Cross Massachusetts to be bound by the BlueCard Terms in the Hospital Agreements, which reveal "Empire's intention to bind" Blue Cross Massachusetts to those provisions. (*Id.* at 10.) According to Northwell, functional privity "was the intended and natural outcome" of Blue Cross Massachusetts's desire to gain access to Northwell's services at in-network rates through the BlueCard Program, with its corresponding obligation to pay for those services subject to the Hospital Agreements. (*Id.*) Northwell also argues that both the Association website and the IRS memo render plausible its allegation that Blue Cross Massachusetts and Empire are in functional privity. (*Id.* at 10–11.)

On reply, Blue Cross Massachusetts argues that Northwell's theory of functional privity fails because the Amended Complaint does not allege any direct dealings between Empire and Blue Cross Massachusetts that would support a finding of functional privity. (Reply at 6.) According to Blue Cross Massachusetts, Northwell's allegations that Empire and Blue Cross

Massachusetts each have separate agreements with the Association defeat the "close connection that functional privity requires." (*Id.* at 7.)

"A non-party to an agreement may nevertheless be held liable for an alleged breach when the non-party's relationship with the contracting party is 'so close as to approach that of privity.'" *Reza*, 2017 WL 11700559, at *5 (quoting *Ossining Union Free Sch. Dist.*, 73 N.Y.2d at 424); *but see Everlast World's Boxing Headquarters Corp. v. Trident Brands Inc.*, No. 19-CV-503 (JMF), 2020 WL 917058, at *3–4 (S.D.N.Y. Feb. 26, 2020) (noting that *Dormitory Auth. of New York v. Samson Constr. Co.*, 94 N.E.3d 456, 459 (N.Y. 2018), casts doubt on the continuing validity of the doctrine). "[T]o invoke the doctrine, a party has to demonstrate '(1) awareness that the [work product was] to be used for a particular purpose or purposes; (2) reliance by a known party or parties in furtherance of that purpose; and (3) some conduct by the defendants linking them to the party or parties and evincing defendant's understanding of their reliance.'" *Id.* (quoting *Ossining*, 539 N.Y.2d at 425).

Northwell's argument that Blue Cross Massachusetts and Empire's participation in the BlueCard Program created functional privity between them is essentially the same as its agency argument. Again, this argument elides the fact that both Blue Cross Massachusetts and Empire participate in the program as independent members and separate entities. As a result, it is not plausible that their mutual but separate participation, pursuant to separate License Agreements, created a relationship "so close as to approach that of privity." *Reza*, 2017 WL 11700559, at *5 (quotation marks omitted).

Moreover, the Amended Complaint fails to allege facts showing any of the three elements of functional privity. First, Northwell fails to allege that Blue Cross Massachusetts was aware that the Hospital Agreements were to be used to create functional privity between Blue Cross

Massachusetts and Empire. Indeed, Blue Cross Massachusetts states that it never saw the

Hospital Agreements prior to this litigation and that Blue Cross Massachusetts's in-house

counsel still lacks access to them. (Mem. at 2.) Second, Northwell fails to allege that Empire

relied on the Hospital Agreements to create functional privity between it and Blue Cross

Massachusetts. And third, Northwell fails to allege any conduct by Blue Cross Massachusetts

that would show its understanding that Empire was relying on the Hospital Agreements to create

functional privity. *See, e.g.*, *Everlast*, 2020 WL 917058, at *4 (finding no functional privity

where plaintiff pled "no allegation that [plaintiff] and [defendant] dealt with each other directly,

let alone had direct dealings that evince [defendant]'s understanding that [plaintiff] was relying

on [defendant] for royalty payments."). Accordingly, Northwell's functional privity theory fails.

Blue Cross Massachusetts has provided supplemental authority that supports this finding.

In the Arizona Decision, the court explains that it refused to apply the forum-selection clause of

the provider agreement against the non-signatory defendant because

> [t]he amended complaint does not allege facts that would establish such a close
> relationship between Empire and [Blue Cross Blue Shield of Arizona] that it
> would be foreseeable that the forum selection clause would be enforced against
> defendant, a nonsignatory to the [provider agreement]. Rather, plaintiff describes
> the two as independent companies acting pursuant to separate licensing
> agreements each signed with [the Association]. Accordingly, even construing the
> allegations in the light most favorable to plaintiff, the amended complaint does
> not allege sufficient facts to establish that defendant has such a close relationship
> with Empire that it was foreseeable that the forum selection clause would be
> enforced against them.

(*Blue Cross & Blue Shield of Ariz., Inc.*, Index No. 618430/2022 at 5–6.) Here too, Northwell

has failed to allege that the relationship between Blue Cross Massachusetts and Empire is so

close as to render foreseeable the enforcement of Empire's in-network provider agreements

against Blue Cross Massachusetts.

Northwell argues that *Kahuna Group, Inc. v. Scarano Boat Building, Inc.*, 984 F. Supp. 109 (N.D.N.Y. 1997) supports its argument because there, the court found functional privity where the plaintiff "'understood the written agreement to encompass [the non-signatory] Defendants' and the plaintiff was never told otherwise." (Opp'n at 10 (quoting *Kahuna*, 984 F. Supp. at 113).) In *Kahuna*, the court found material questions of fact as to whether there was a contractual relationship between plaintiff and a group of defendants based on the existence of an oral contract, functional privity, and the existence of a joint venture. *Kahuna*, 984 F. Supp. at 113. But Northwell has not alleged anything like the facts submitted in *Kahuna*, which included a written agreement and evidence of direct dealings between the parties alleged to have functional privity, including an oral agreement as to the boat in question. *Id.* Moreover, the bulk of the court's analysis focused on joint venture liability, which Northwell has not alleged. Therefore, *Kahuna* does not support Northwell's functional privity theory.

3. The Amended Complaint Does Not Plausibly Allege that Other Documents Show that Blue Cross Massachusetts is Bound by the Hospital Agreements

Third, Northwell argues that "[a] non-signatory also is bound by a contract where (1) the contract anticipates the non-signatory's current and future involvement in the contract activity, and (2) other documents show the non-signatory's liability for the contract activity." (Opp'n at 11.) According to Northwell, Blue Cross Massachusetts is bound by the Hospital Agreements because they address Blue Cross Massachusetts's "current and future involvement" in the subject matter of the agreement—namely, paying for Northwell services for patients insured by Blue Cross Massachusetts—and because other documents (the License Agreement and unspecified BlueCard policy documents) are consistent with the terms in the Hospital Agreements that require Blue Cross Massachusetts, not Empire, to pay Northwell for treating Blue Cross Massachusetts's insureds. (*Id.* at 11–12.) Northwell's sole support for this theory is *ESI, Inc. v.*

23

*Coastal Corp.*, 61 F. Supp. 2d 35 (S.D.N.Y. 1999). On reply, Blue Cross Massachusetts argues that the License Agreement and other BlueCard Program documents "at most" show that Blue Cross Massachusetts agreed to make payments to Empire, not Northwell, because the Hospital Agreements "clearly provide[]" that Empire is responsible for paying Northwell for services to patients insured by it and other BlueCard Program members. (Reply at 7.) Blue Cross Massachusetts also asserts that Northwell has the License Agreement and BlueCard Program documents, but has chosen not to rely on specific text in these agreements. (*Id.* at 9 n.12.)

Northwell's reliance on *ESI* as the basis of its legal theory is misplaced. There, the court found that the parties alleging breach of contract against a particular defendant were in privity with that defendant via a joint venture relationship. *See ESI*, 61 F. Supp. 2d at 73–74. The court evaluated that relationship by looking at the third-party agreement at issue as well as "other documentary evidence," and the fact that those parties had attended meetings and participated in the negotiations and drafting of the third-party agreement. *Id.* at 74. Those facts are inapposite here because Northwell has not alleged that Blue Cross Massachusetts was part of a joint venture with Northwell or Empire or that Blue Cross Massachusetts participated in the negotiation and drafting of the Hospital Agreements. Indeed, the Amended Complaint lacks any allegation that Blue Cross Massachusetts had a single direct dealing with Northwell or that the relationships established by the License Agreement and unspecified BlueCard program documents give rise to a plausible joint venture between Blue Cross Massachusetts and Empire. Accordingly, *ESI* does not support Northwell's legal theory.

4.  <u>The Amended Complaint Does Not Plausibly Allege that Blue Cross
    Massachusetts Manifested its Intent to be Bound by or Assumed the Hospital
    Agreements</u>

Finally, Northwell argues that Blue Cross Massachusetts is liable for breach of the

Hospital Agreements because it manifested its intent to be bound by repeatedly accepting both

the benefits and the obligations of the BlueCard Terms—namely, that patients insured by other

BlueCard Program members can access Northwell's healthcare services at in-network rates and

that Empire will pay Northwell for those services on behalf of the other BlueCard Program

members—including by "actively" determining the amount due to Northwell under the terms of

the Hospital Agreements. (Opp'n at 12–13.)

On reply, Blue Cross Massachusetts argues that Northwell's theory fails because Blue

Cross Massachusetts's "alleged acceptance of the benefits of Empire's negotiated rates and its

involvement in determining the amount due to Northwell under the terms of the Hospital

Agreement[s]" do not "demonstrate[] any actual performance under the contracts, nor any

assumption of Empire's own role." (Reply at 7–8.)

A non-signatory to a contract may be held liable for breach of contract if it has

"manifested an intent to be bound by the contract" or assumed obligations under the contract.

*MBIA Ins. Corp. v. Royal Bank of Can.*, 706 F. Supp. 2d 380, 396–97 (S.D.N.Y. 2009) (citing

*Horsehead Indus., Inc. v. Metallgesellschaft AG,* 657 N.Y.S.2d 632, 633 (1997)). Courts infer

intent to be bound "from the [non-signatory's] participation in the negotiation of the contract, or

if the [signatory] is a dummy for the [non-signatory], or if the [signatory] is controlled by the

[non-signatory] for the [non-signatory] own purposes." *Id.* (quotation marks omitted).

Here, the Amended Complaint fails to plausibly allege that Blue Cross Massachusetts

manifested its intent to be bound by the Hospital Agreements or assumed obligations under the

Hospital Agreements. First, the Amended Complaint lacks any allegation that Blue Cross

Massachusetts manifested its intent to be bound by the Hospital Agreements. Northwell does not allege that Blue Cross Massachusetts was involved in negotiating or drafting the Hospital Agreements. Indeed, as noted above, Blue Cross Massachusetts states that it never saw the Hospital Agreements until this litigation and that its in-house counsel is still unable to view the Agreements because they are designated "attorneys' eyes only." (Mem. at 2.) Second, the Amended Complaint lacks allegations that Blue Cross Massachusetts assumed obligations under the Hospital Agreements. Northwell does not allege that Blue Cross Massachusetts acknowledged that it was the actual party in interest or micro-managed performance under the Hospital Agreements. *Cf. Impulse Mktg. Grp., Inc. v. Nat'l Small Bus. All., Inc.*, No. 05-CV-7776 (KMK), 2007 WL 1701813, at *6 (S.D.N.Y. June 12, 2007) (finding that plaintiff alleged that nonsignatory assumed the obligations of the contract in question where it "micro-managed performance under the Contract, acknowledged that it was the actual party in interest, and paid for [the signatory's] services."). Nor does Northwell account for the fact that Blue Cross Massachusetts's alleged acceptance of the benefits and obligations of the BlueCard Terms as well as its determination of amounts due to Northwell were taken pursuant to its separate License Agreement and conform to the payment structure of the Empire Agreements. It is not plausible that these actions amount to Blue Cross Massachusetts's assumption of the Hospital Agreements.

C.  The Hospital Agreements' Remedies do Not Preclude this Suit but Confirm that Blue Cross Massachusetts is Not Liable for Breach of the Hospital Agreements

Finally, Blue Cross Massachusetts argues that Northwell's breach of contract claim fails because Northwell has not exhausted its remedies against Empire under the Hospital Agreements. (Mem. at 16–17.) Blue Cross Massachusetts argues that Northwell cannot both obligate Blue Cross Massachusetts under the Hospital Agreements and disclaim the Agreements' mandatory alternative dispute resolution procedures. (*Id.* at 16.) Northwell asserts that the

alternative dispute resolution procedures are not mandatory and do not cover lack of payment or underpayment for all of the claims at issue, that Northwell appealed the claims pursuant to the Hospital Agreements to Blue Cross Massachusetts, and that Blue Cross Massachusetts has failed to timely determine those appeals. (Opp'n at 15–17.) On reply, Blue Cross Massachusetts argues it has no contractual role in determining an appeal under the terms of the Hospital Agreements because the Agreements ████████████████████████████████████████████

████████████████ (Reply at 8.) Blue Cross Massachusetts further argues that Northwell has not exhausted its contractual remedies because ██████████████████████████

████████████████████████████████████████████████████████

(*Id.*)

        Although Northwell's Amended Complaint fails to state a claim for relief for breach of contract for the reasons set out above, the Court will consider whether the Hospital Agreements' dispute resolution process acts as another obstacle to Northwell's claim. The Hospital Agreements set out the following dispute resolution process: █████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

███████████████████

            ████████████████████████████████████████
            ████████████████████████████████████████
            ████████████████████████████████████████
            ████████████████████████████████████████



"[A] party is bound by the provisions of a contract that [it] signs, unless [it] can show special circumstances that would relieve [it] of such an obligation." *Ostreicher v. TransUnion, LLC*, No. 19-CV-8174 (KMK), 2020 WL 3414633, at *5 (S.D.N.Y. June 22, 2020) (citations omitted) (citing *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987), *abrogated on other grounds by Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). Courts dismiss breach of contract claims where a plaintiff fails to pursue remedies as required by the contract. *See, e.g.*, *Alleyne v. Four Seasons Hotel - N.Y.*, 99 Civ. 3432 (JGK), 2001 U.S. Dist. LEXIS 1503, at *47 (S.D.N.Y. Feb. 15, 2001) (dismissing breach of contract claim where plaintiff failed to exhaust contractual remedies).

Here, the Hospital Agreements describe dispute resolution processes ███████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ And the Agreements memorialize ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████

Although the Hospital Agreements do not preclude Northwell from filing suit to enforce rights under those agreements, they confirm that Blue Cross Massachusetts is not the proper target for a breach of contract claim. The dispute resolution process set out across the Hospital Agreements clearly ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ Under the Hospital Agreements, ████████████████████████████████████

████████████████████████████████████████████████

## II.    Third-Party Beneficiary Claim

The second claim in the Amended Complaint is a third-party beneficiary claim. Northwell alleges that it is an intended third-party beneficiary of the License Agreement between the Association and Blue Cross Massachusetts, agreements regarding participation in the BlueCard Program, and "any other agreement between Empire and Defendant, or among the [Association] Member companies as a group, with respect to the BlueCard Program." (Am. Compl. ¶ 56, at 18.) Northwell alleges that Blue Cross Massachusetts's failure to reimburse Northwell in accordance with the Hospital Agreements for healthcare services provided through the BlueCard Program is a breach of its obligations under the License Agreement standards that govern its participation in the BlueCard Program, namely to "effectively and efficiently

determine claims of an in-network provider of a Home Plan, and to provide the financial resources needed to pay that in-network provider." (*Id.* ¶ 57, at 18–19.)

Blue Cross Massachusetts argues that Northwell's third-party beneficiary claim fails because the License Agreement was not plausibly intended for its benefit. (Mem. at 17–18.) Although Northwell alleges that licensees "anticipated, expected, and required" each Association member to "effectively and efficiently pay or reimburse that in-network participating provider of the Host Plan in accordance with" the applicable provider agreement (Am. Compl. ¶ 56, at 18), Blue Cross Massachusetts argues that Northwell fails to identify a provision of the License Agreement that imposes this obligation on Blue Cross Massachusetts (Mem. at 18). Blue Cross Massachusetts contends that Northwell's argument rests instead on "general standards" that "are not sufficiently specific to plausibly create rights in third-party out-of-state healthcare providers." (*Id.*)

Northwell makes three points in support of its third-party beneficiary claim. First, Northwell argues that Blue Cross Massachusetts's argument that the License Agreement evinces an intent to benefit other licensees, not providers, is premature because it has not submitted the License Agreement or the terms of the BlueCard Program to the Court.[4] (Opp'n at 18.) Second, Northwell argues that it is an intended third-party beneficiary of the License Agreement because no other party can recover if Blue Cross Massachusetts breaches the contract by paying Northwell less than it is due under "the agreements among the [Association] and its members." (*Id.* at 19.) Third, Northwell argues it is an intended third-party beneficiary of the License

---

[4] On reply, Blue Cross Massachusetts contends that Northwell has those documents and chose not to submit them to this Court. (Reply at 9 n.12.)

Agreement because the agreement clearly demonstrates an intent to permit enforcement by Northwell. (*Id.* at 19.)

Because the Amended Complaint fails to plausibly allege that Northwell is an intended beneficiary of the License Agreement or any other agreement, I dismiss Northwell's intended third-party beneficiary claim.

"New York contract law distinguishes between an intended third-party beneficiary who may sue on a contract made for its benefit, and an incidental beneficiary with no right to enforce a particular contract." *In re George Wash. Bridge Bus Station Dev. Venture LLC*, 65 F.4th 43, 54 (2d Cir. 2023) (quotation marks and alterations omitted) (citing *Dormitory Auth. of N.Y.*, 30 N.Y.3d at 710). "A party asserting rights as a third-party beneficiary must establish '(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.'" *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006) (quoting *Cal. Pub. Employees. Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434–35 (2000)). "Proving third-party beneficiary status requires that the contract terms clearly evidence[ ] an intent to permit enforcement by the third party in question." *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 49 (2d Cir. 2014) (quotation marks omitted) (citing *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,* 66 N.Y.2d 38, 45 (1985)). "Under New York law, dismissal of a third-party-beneficiary claim is appropriate where the contract rules out any intent to benefit the claimant, . . . or where the complaint relies on language in the contract or other circumstances that will not support the inference that the parties intended to confer a benefit on the claimant . . . ." *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119,

124 (2d Cir. 2005) (citing *Cal. Pub. Employees' Ret. Sys.*, 741 N.E.2d at 104–05; *Cole v. Metro. Life Ins. Co.*, 708 N.Y.S.2d 789, 790 (App. Div. 2000); *First Capital Asset Mgmt., Inc. v. N.A. Partners, L.P.*, 688 N.Y.S.2d 25, 27 (1999); *Artwear, Inc. v. Hughes*, 615 N.Y.S.2d 689, 693 (1994)); *but see Thomas v. New York City*, 814 F. Supp. 1139, 1152 (E.D.N.Y. 1993) (denying motion to dismiss third-party beneficiary claim because "the parties have not submitted the contracts").

Here, although the parties have failed to submit the License Agreement or any of the other documents Northwell invokes in support of its third-party beneficiary claim, dismissal of this claim is appropriate because Northwell's Amended Complaint "relies on language in the contract . . . that will not support the inference that the parties intended to confer a benefit on the claimant." *Subaru Distributors Corp.*, 425 F.3d at 124. Northwell quotes the following language, which allegedly comes from the License Agreement between Blue Cross Massachusetts and the Association: that Blue Cross Massachusetts "shall effectively and efficiently participate in" the BlueCard Program "for the purposes of providing portability of membership between [members] and ease of claims processing for customers receiving benefits outside of the [member's] Service Area" and "take such action as required to ensure its financial performance in" said program.[5] (Am. Compl. ¶ 13.) This language does not impose on Blue Cross Massachusetts the obligation to reimburse Northwell in accordance with the Hospital Agreements, evince an intent to benefit Northwell, or "clearly" evince an intent to permit Northwell to enforce the License Agreement in the event of a breach by Blue Cross Massachusetts. *Hillside*, 747 F.3d at 49. Indeed, as Blue

---

[5] Although Northwell references other agreements as the basis of its third-party beneficiary claim, it has not submitted them before the Court or identified any specific provision of them as the basis of its claim. Accordingly, the Court analyzes only the allegations of the Amended Complaint pertaining to the License Agreement.

Cross Massachusetts points out, this language evinces an intent to benefit other BlueCard Program members, who are explicitly mentioned in the portions of the License Agreement upon which Northwell relies, rather than Northwell itself or providers in general, who are not. *See* Mem. at 18; *BCBSM, Inc. v. GS Labs, LLC*, No. 22-CV-513 (ECT/DJF), 2023 WL 2044329, at *22 (D. Minn. Jan. 30, 2023) (finding implausible provider-plaintiff's allegation that it was an intended beneficiary of BlueCard Program member's contracts with other members because plaintiff's "description of these contracts omits mention of any particular contract term or terms indicating an intent to benefit providers" and plaintiff "does not allege that it or providers generally are referenced in the contracts").

Northwell's other arguments are similarly unpersuasive. Relying on *Fourth Ocean Putnam Corp.*, 66 N.Y.2d at 45, Northwell argues that it is purportedly the only party that can recover if Blue Cross Massachusetts breaches the License Agreement and other BlueCard program agreements by paying Northwell less than it is due and that Association members demonstrated an interest in permitting Northwell to enforce these agreements because they fixed the rates at which Northwell is to be paid in their respective provider agreements. (Opp'n at 19.) Significantly, however, as Blue Cross Massachusetts points out, "presumably, either the [Association] or Empire itself could sue if Blue Cross Massachusetts failed to reimburse Empire under contracts to which they—and not Northwell—are parties." (Reply at 9–10.)

Northwell also argues that the statement on the Association's website, Empire's inclusion of the BlueCard Terms in the Hospital Agreements, and Blue Cross Massachusetts's participation in the BlueCard Program show the Association and its members' intent to permit provider enforcement of the License Agreement. (Opp'n at 19.) But the website language quoted in the Amended Complaint does not refer to enforcement (*see* Am. Compl. ¶ 14); I have

explained above why it is implausible that Blue Cross Massachusetts is liable for breach of the

Hospital Agreements (*see supra* at Section I); and it is not clear how Blue Cross Massachusetts's

participation in the BlueCard Program evinces its intent to permit Northwell to enforce an

agreement that Northwell did not negotiate or sign. When the "parties' intent to benefit the third

party" is not "apparent from the face of the contract and absent clear contractual language

evincing such intent, New York courts have demonstrated a reluctance to construe such an

intent." *Bild v. Konig*, No. 09-CV-5576 ARR VVP, 2011 WL 1563576, at *2 (E.D.N.Y. Apr. 25,

2011) (alterations omitted) (quoting *LaSalle Nat'l Bank v. Ernst & Young LLP*, 729 N.Y.S.2d

671, 676 (N.Y. App. Div. 2001)). Accordingly, Northwell's third-party beneficiary claim fails to

state a claim for relief.

### III.     Unjust Enrichment and Quantum Meruit Claims[6]

Finally, the Amended Complaint alleges that if Blue Cross Massachusetts asserts that

there is no contractual relationship between Northwell and Blue Cross Massachusetts, then Blue

Cross Massachusetts is liable to pay Northwell the reasonable value of the healthcare services it

provided under quasi-contract theories of unjust enrichment and quantum meruit. (Am. Compl. ¶

57 at 19.)

Blue Cross Massachusetts argues that Northwell's quasi-contract claims fail because they

are precluded by the Empire Agreements, which govern the amounts owed to Northwell for

providing health care services to patients insured by Blue Cross Massachusetts. (Mem. at 19–20;

Reply at 10.) Blue Cross Massachusetts further argues that Northwell cannot plead the claims in

---

[6] Under New York law, "quantum meruit and unjust enrichment are not separate causes of
action," and courts in this Circuit regularly "analyze quantum meruit and unjust enrichment
together as a single quasi contract claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v.
Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).

the alternative because the Amended Complaint does not dispute the existence or enforceability of a contract governing the amounts owed to Northwell, but only whether such a contract applies to Blue Cross Massachusetts. (Mem. at 21.)

Northwell argues that it validly pleads its quasi-contract claims in the alternative because under Blue Cross Massachusetts's construction of the Hospital Agreements, neither Blue Cross Massachusetts nor any other Association member would be obligated to pay Northwell and the Agreements would not govern a dispute regarding who is legally responsible to pay Northwell for healthcare provided to Blue Cross Massachusetts's insureds. (Opp'n at 21.) Northwell also argues that the Motion to Dismiss is "premature" because Blue Cross Massachusetts "disputes the scope and enforceability" of the Hospital Agreements, raising a dispute as to "whether conduct that has yet to be established falls within the scope" of the Agreements. (*Id.* at 22.) On reply, Blue Cross Massachusetts argues that the quasi-contract claims are duplicative of the breach of contract claim and must be dismissed because Northwell has not pointed to any ambiguity in the Hospital Agreements that raises a question as to whether the Agreements provide a remedy for non-payment of claims. (Reply at 10.)

"The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Villnave Constr. Servs., Inc. v. Crossgates Mall Gen. Co. Newco, LLC*, 161 N.Y.S.3d 480, 485 (2022) (alterations omitted). "Where the existence of the contract is in dispute, the plaintiff may allege causes of action to recover for unjust enrichment and in quantum meruit as alternatives to a cause of action alleging breach of contract." *Id.* (alterations omitted); *see also Mid-Hudson Catskill Rural Migrant Ministry, Inc*, 418 F.3d at 175 (2d Cir. 2005) ("New York law does not permit recovery in quantum meruit, however, if the parties have a valid, enforceable

contract that governs the same subject matter as the quantum meruit claim."). "This principle applies even where the plaintiff or defendant *is not a party to the contract*." *Sols. Express Ltd. v. Ashley Furniture Indus., Inc.*, No. 20-CV-7843 (CS), 2023 WL 2393861, at *5 (S.D.N.Y. Mar. 7, 2023) (emphasis supplied); *see also Viable Mktg. Corp. v. Intermark Commc'ns, Inc.*, No. 09-CV-1500, 2011 WL 3841417, at *3 (E.D.N.Y. Aug. 26, 2011) (unjust enrichment claim under New York law precluded by contract even where plaintiff was not party to contract); *Tchrs. Ins. & Annuity Ass'n of Am. v. CRIIMI MAE Servs. Ltd. P'ship*, 681 F. Supp. 2d 501, 511 (S.D.N.Y. 2010) (same), *aff'd*, 481 F. App'x 686 (2d Cir. 2012).

Here, Northwell's quasi-contract claims are based on the theory that Blue Cross Massachusetts has been unjustly enriched by its failure to compensate Northwell for healthcare services provided to patients insured by Blue Cross Massachusetts. (Am. Compl. ¶¶ 57–58, 64, 66–67, 71–78.) This is the same subject matter as that covered by the Empire Agreements. The Hospital Agreements, Practitioner Agreement, 2008 Amendment, and 2014 Amendment set out

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████ Indeed, elsewhere in its Amended Complaint, Northwell seeks to hold Blue Cross Massachusetts liable for alleged breaches of the rates set out in the Hospital Agreements. (*See* Am. Compl. ¶¶ 39–53.) Where, as here, the parties do not dispute the existence or enforceability of a contract, quasi-contract claims for unjust enrichment and quantum meruit cannot be pled in the alternative and must be dismissed as duplicative. *See Villnave Constr. Servs., Inc.*, 161 N.Y.S.3d at 485; *see, e.g., Cereus*

*Prod. Dev., Inc. v. Boom LLC*, No. 14 CIV. 4292 PAC, 2015 WL 3540827, at *8 (S.D.N.Y. June 5, 2015) (dismissing quasi-contract claims as duplicative of breach of contract claims because the parties did "not dispute the existence or enforceability of the contract but [did] dispute whether the contract applies to a particular" [party]).

**CONCLUSION**

For the reasons set forth above, the Court grants Defendant's Motion to Dismiss the Amended Complaint in its entirety with prejudice. (ECF No. 19.)


Dated: Central Islip, New York
July 24, 2024

                                        /s/ Nusrat J. Choudhury
                                        NUSRAT J. CHOUDHURY
                                        United States District Judge