**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Northwell Health, Inc., <br><br> Plaintiff, <br><br> -v- <br><br> Blue Cross and Blue Shield of Massachusetts, Inc., <br><br> Defendant. | 2:23-cv-977 (NJC) (AYS) <br><br> REDACTED |

## OPINION AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Northwell Health, Inc. ("Northwell") brought this action against Defendant Blue Cross and Blue Shield of Massachusetts, Inc. ("Blue Cross Massachusetts") under New York law for breach of contract, breach of a third-party beneficiary contract, and, in the alternative, for unjust enrichment and quantum meruit over Blue Cross Massachusetts' alleged failure to reimburse Northwell for healthcare services provided to patients insured by Blue Cross Massachusetts. (*See generally* Am. Compl., ECF No. 12.) On July 24, 2024, I issued an Opinion and Order granting Blue Cross Massachusetts' Motion to Dismiss the Amended Complaint with prejudice ("Dismissal Order") (Op. & Order, ECF No. 43). Northwell filed a Motion for Reconsideration, and, on January 27, 2025, I issued a Memorandum and Order denying that motion ("Reconsideration Order") (Mem. & Order, ECF No. 68) (together, the "Orders").

Before me is Northwell's Motion for Leave to File a Second Amended Complaint ("Motion to Amend"). (Mot. Amend, ECF No. 84.) For the following reasons, I deny the Motion to Amend.

**BACKGROUND**

The Dismissal Order and the Reconsideration Order are incorporated by reference, and I presume familiarity with both Orders. *See*, *e.g.*, *Williams v. Nat'l R.R. Passenger Corp. (Amtrak)*, No. 18-cv-7070, 2019 WL 3423267, at *1 (S.D.N.Y. July 30, 2019) (incorporating by reference prior recitations of procedural history and facts). Consequently, I recite only those facts necessary to resolve the Motion to Amend.

Northwell initially filed this case in New York state court on December 29, 2022 (Compl., ECF No. 7; Summons, ECF No. 1-1), and Blue Cross Massachusetts timely removed the action to federal court on February 7, 2023, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). (Not. Removal, ECF No. 1.) The case was originally assigned to United States District Judge Joan M. Azrack. (Elec. Notice Feb. 8, 2023.) The original Complaint brought the following five New York common law claims against Blue Cross Massachusetts based on the allegation that Blue Cross Massachusetts owes Northwell $1,841,884.59 plus interest for unpaid claims for services Northwell provided to patients insured by Blue Cross Massachusetts: (1) breach of contract, (2) breach of third-party beneficiary contract, (3) unjust enrichment, (4) quantum meruit, and (5) a claim referred to generally as "prima facie tort." (Compl. ¶¶ 26–69.)

On April 27, 2023, Blue Cross Massachusetts filed a letter motion seeking a pre-motion conference in anticipation of its motion to dismiss the Complaint. (Defs.' Mot. Dismiss Ltr., ECF No. 9.) Rather than oppose, Northwell exercised its right to amend the Complaint "once as a matter of course" to cure the deficiencies raised by Blue Cross Massachusetts. Pl.'s Mot. Dismiss Resp. Ltr., ECF No. 10; *see* Fed. R. Civ. P. 15(a)(1) (providing timeframes in which a plaintiff may amend a complaint "once as a matter of course").

On May 18, 2023, Northwell filed the Amended Complaint. (Am. Compl., ECF No. 12.) The Amended Complaint brought three claims supported by what are materially the same allegations, albeit with more detail, as those alleged in the original Complaint: (1) breach of contract, (2) breach of third-party beneficiary contract, and (3) quasi-contract claims (i.e., unjust enrichment and quantum meruit). (*Id.*)

On July 24, 2024, I granted Blue Cross Massachusetts' Motion to Dismiss the Amended Complaint *with prejudice* under Rule 12(b)(6), Fed. R. Civ. P., for failure to state any of the asserted claims. (Dismissal Order.) I held that the breach of contract claim failed because, contrary to Northwell's argument, neither Section III.h. of the 2008 Amendment nor any other provision of the Empire Agreements[1] and their subsequent amendments plausibly established contractual privity between Blue Cross Massachusetts and Northwell, and no exception to the rule requiring privity applied. (*Id.* at 10–26.) I also held that the third-party beneficiary claim failed because the Amended Complaint did not plausibly allege that Northwell was an intended beneficiary of *any* of the agreements invoked, including but not limited to the License Agreement. (*Id.* at 31–34.) Finally, I held that the Amended Complaint failed to state claims for unjust enrichment and quantum meruit because these claims were precluded by the Empire Agreements. (*Id.* at 35–37.)

The July 24, 2024 dismissal of the Amended Complaint with prejudice resolved all claims in this action. However, due to a clerical error, the Clerk of Court did not file a separate document marked "judgment" on the docket as required by Rules 79(a) and 58(a), Fed. R. Civ. P. *See* Fed. R. Civ. P. 79(a) (requiring the clerk of court to record a judgment or order in the civil

---

[1] All defined terms have the same meaning as set forth in the Orders. As explained there, the Empire Agreements include the Hospital Agreements, the Practitioner Agreement, and amendments to these agreements. (Dismissal Order at 3–6.)

docket sheet); Fed R. Civ P. 58(a) ("Every judgment and amended judgment must be set out in a separate document."). On August 2, 2024, I publicly filed a redacted version of the Dismissal Order and closed the case. (ECF No. 45.)

Several days later, on August 7, 2024, Northwell filed the Motion for Reconsideration, invoking Rule 59(e), Fed. R. Civ. P., which governs motions to "alter or amend a judgment," as well as Local Rule 6.3 and Rule 60(b)(1) and (b)(6), Fed. R. Civ. P. (Mot. Reconsid., ECF No. 46.) Northwell subsequently re-filed that motion in order to comply with the applicable page limits and again invoked Rules 59(e) and 60(b)(1) and (b)(6), and Local Civil Rule 6.3. (Corrected Mem. Supp. Mot. Reconsid., ECF No. 55-1.) In the Motion for Reconsideration, Northwell maintained that the Amended Complaint plausibly alleged breach of contract and third-party beneficiary claims against Blue Cross Massachusetts, raising multiple arguments concerning why it believed that the Dismissal Order was wrongly decided. (*See generally* Corrected Mem. Supp. Mot. Reconsid.) Nevertheless, in a footnote of its opening brief in support of the Motion for Reconsideration, Northwell indicated that it "seeks leave to file a Second Amended Complaint to further plead" facts concerning purported "rules" to which Blue Cross Massachusetts and Empire are bound as part of their membership in the Association. (*Id.* at 4 n.5.) Through its invocation of Rule 59(e), the Motion for Reconsideration treated the Dismissal Order as a final judgment in this action.

On August 9, 2024, Northwell filed a letter motion seeking a pre-motion conference in anticipation of filing a motion to amend. (Pl.'s Mot. Amend PMC Ltr., ECF No. 48.) On August 19, 2024, Blue Cross Massachusetts opposed. (Defs.' Mot. Amend PMC Resp. Ltr., ECF No. 51.) Northwell's pre-motion conference letter asserted that amendment would not be futile and vaguely referenced, among other things, "far more robust allegations . . . on the alleged payment

structure and Empire's role in that structure," "the intent and reasons for the terms in the Hospital Agreements," and "additional factual allegations [that] will provide plausible support for additional legal bases for the third-party beneficiary claim." (*Id.* at 2–3.) However, Northwell did not address these proposed amendments with any specificity or attach a proposed second amended complaint for the Court's review. (*See id.*)

On December 21, 2024, because 150 days had run from the date of the Dismissal Order, judgment automatically entered under Rule 58(c)(2)(B), Fed. R. Civ. P. *See Stidhum*, 2022 WL 1087144, at *2 ("In the absence of a separate document, judgment is deemed entered 150 days after entry of the order dismissing [the plaintiff's] suit" (discussing Fed. R. Civ. P. 58(c)(2)(B)); *see also Arzuaga v. Quiros*, 781 F.3d 29, 33 (2d Cir. 2015) (holding that the 30-day period to appeal begins to run 150 days from "the entry of the dispositive order" where the court "fails to set out the judgment in a separate document"). Indeed, in *Stidhum*, the Second Circuit held that where the district court dismissed an action *without* prejudice but "no judgment . . . was ever set out in a separate document or labeled a 'judgment,'" judgment was deemed to have been entered 150 days after the dismissal order was entered. *Stidhum*, 2022 WL 1087144, at *1–2.

On January 27, 2025, I denied the Motion for Reconsideration, finding that it did not identify any "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" that would warrant reconsideration under Rules 59(e) or 60(b), Fed. R. Civ. P, but rather rehashed arguments already rejected in the Dismissal Order. (*See* Reconsideration Order (quoting *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142–43 (2d Cir. 2020)).) On the same day, I denied Northwell's pre-motion letter concerning its anticipated motion to amend with leave to renew following the parties' review of the Reconsideration Order. (Elec. Order, Jan. 27, 2025.) I specifically required

that any renewed pre-motion letter concerning an anticipated motion to amend the Amended Complaint "shall provide a non-frivolous basis to amend where, as here, the Court has already issued judgment and found that there is no basis to grant reconsideration under Rules 59(e) or 60(b)." (*Id.*)

On February 10, 2025, Northwell filed a renewed pre-motion letter concerning its request for leave to amend (Pl.'s Renewed Mot. Amend PMC Ltr., ECF No. 71), this time attaching a Proposed Second Amended Complaint (Proposed Second Am. Compl., ECF No. 72-1) and a redline version comparing the Amended Complaint and the Proposed Second Amended Complaint (Redline, ECF No. 72-2). On February 25, 2025, Blue Cross Massachusetts opposed. (Defs.' Renewed Mot. Amend PMC Opp'n Ltr., ECF No. 77.) I found that a pre-motion conference was not necessary and ordered full briefing on the Motion to Amend, specifically requiring any briefing to address the following issues:

(1) Under the Second Circuit's holding in *Metzler Investment Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 145 (2d Cir. 2020), and any other binding Supreme Court or Second Circuit authority, what constitutes a "proper case" in which to "take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment"? In addressing this question, the parties will account for the following observation made by the Second Circuit in *Metzler*:

"But we did not address directly whether [*Indiana Public Retirement System v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016)] was a 'proper' [case] within the meaning of *National Petrochemical* [*Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991)], or indeed what that phrase meant. Nor did we identify any circumstances in the case that would render it 'appropriate' to consider the nature of the proposed amendment in determining whether the judgment should be vacated." *Metzler*, 970 F.3d at 145.

(2) Whether this is such a case in which it would be appropriate to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment under Rules 59(e) and 60(b), Fed. R. Civ. P.;

(3) Whether Plaintiff's proposed amendments as set forth in the redlined second amended complaint would be futile;

(4) Whether Defendant would suffer prejudice in the event this Court were to grant Plaintiff leave to file the seconded amended complaint; and

(5) any other arguments the parties wish to raise concerning Plaintiff's motion.

(Elec. Order, Aug. 18, 2025.) On September 23, 2025, Northwell filed the fully-briefed Motion to Amend on the docket and again attached the Proposed Second Amended Complaint and the redline identifying changes from the Amended Complaint. (Mem., ECF No. 84-1; Proposed Second Am. Compl., ECF No. 83-1; Redline, ECF No. 83-2; Opp'n, ECF No. 83-3; Reply, ECF No. 86-3.) The Motion to Amend is therefore fully briefed.

## LEGAL STANDARD

As a general matter, Rule 15(a)(2) provides that the court should "freely give leave" for a party to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). This is a "liberal" and "permissive" standard, and, in the ordinary course, a district court should grant leave to amend absent a showing of "undue delay, bad faith, dilatory motive, or futility." *Sacerdote v. New York University*, 9 F.4th 95, 115 (2d Cir. Aug 16, 2021).[2] However, here, Northwell seeks to amend its complaint after the entry of final judgment in the case. The Clerk of Court did not file a separate document marked "judgment" on the docket as required under Rules 79(a) and 58(a), Fed. R. Civ. P. *See* Fed. R. Civ. P. 79(a) (requiring the clerk of court to record a judgment in the civil docket sheet); Fed R. Civ P. 58(a) ("Every judgment and amended judgment must be set out in a separate document."); *see also Axel Johnson Inc. v. Arthur Andersen & Co.*, 6 F.3d 78, 84 (2d Cir. 1993) (requiring "that the document granting judgment be separate from any judicial memorandum or opinion" and be "labeled a judgment" in order to

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

"reduce uncertainty for the litigants with respect to the date of final disposition of [the] case");

*Stidhum v. 161-10 Hillside Auto Ave, LLC*, No. 21-1653-cv, 2022 WL 1087144, at *1 (2d Cir.

Apr. 12, 2022) (summary order) (same). Nevertheless, judgment was automatically entered

under Rule 58(c)(2)(B) on December 21, 2024—150 days after entry of the Dismissal Order. *See*

Fed. R. Civ. P. 58(c)(2)(B); *Stidhum*, 2022 WL 1087144, at *1 ("Where a separate judgment was

never entered with the order . . . , judgment becomes final 150 days after the order was entered

. . . ." (citations omitted)) Accordingly, Northwell's Motion to Amend is properly considered a

post-judgment motion,[3] and Northwell "must first have the judgment vacated or set aside

pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d

Cir. 2008); *see also Metzler*, 970 F.3d at 145–46 (2d Cir. 2020) (same). The standard for

vacating a judgment is "strict." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021).

---

[3] The parties do not contest that Northwell's Motion to Amend is a *post-judgment* motion to amend. Indeed, as noted, Northwell explicitly invoked Rule 59(e), which governs motions to alter or amend a *judgment*, as a basis for reconsideration of the Dismissal Order in the August 7, 2024 Motion for Reconsideration, which was filed *before* Northwell's deficient August 9, 2024 first letter seeking a conference concerning an anticipated motion to amend the Amended Complaint. (*See* Mot. Reconsid., ECF No. 46; Corrected Mem. Supp. Mot. Reconsid., ECF No. 55-1; Pl.'s Mot. Amend PMC Ltr., ECF No. 48.)

Nor is the Motion to Amend properly understood to be anything other than a post-judgment motion to amend. Northwell filed its renewed request for a conference on an anticipated motion to amend the Amended Complaint on February 10, 2025, which was well after judgment entered on December 21, 2024 under Rule 58(c)(2)(B).

Although Northwell filed its original, deficient request for a conference concerning an anticipated motion to amend on August 9, 2024, such a motion is not properly considered a pre-judgment motion for two reasons. First, at that point, the Court had dismissed with prejudice all claims in Northwell's Amended Complaint. Second, in the August 9, 2024 letter, Northwell addressed its arguments for leave to amend in broad strokes and failed to provide a redlined version of the Amended Complaint showing any amendments it sought to make, in violation of Local Civil Rule 15.1(a). The Court denied the August 9, 2024 request for a pre-motion conference without prejudice and subject to renewal following the parties' consideration of the January 27, 2025 Reconsideration Order. (Elec. Order, Jan. 27, 2025.)

Under Rule 59(e), courts should vacate a judgment "only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or *prevent manifest injustice*.'" *Metzler*, 970 F.3d at 42–43 (2d Cir. 2020) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)) (emphasis added). The "manifest injustice" standard affords the district court substantial discretion and is rarely met. *See Chitkara v. N.Y. Tel. Co.*, 45 F. App'x 53, 55 (2d Cir. 2002). Rule 60(b) is "a mechanism for extraordinary judicial relief invoked only if the moving party demonstrates exceptional circumstances." *Ruotolo*, 514 F.3d at 191.[4] Specifically, a motion for relief from judgment under Rule 60(b)(6) (for "any other reason that justifies relief") must only be applied in "extraordinary circumstances*." BLOM Bank SAL v. Honickman*, 605 U.S. ---, 145 S. Ct. 1612, 1617, 1620 (2025).

The Supreme Court first addressed the standards applied to resolve a post-judgment motion to amend in *Foman v. Davis*, 371 U.S. 178 (1962). In that case, the Supreme Court held that the district court abused its discretion in denying the plaintiff's motion to vacate the judgment under Rule 59(e) in order to amend the complaint "in the absence of any apparent or

---

[4] The exceptional circumstances permitting Rule 60(b) relief are:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

declared reason." *Id.* at 182. Since *Foman*, the Second Circuit, on multiple occasions, has applied the Supreme Court's holding to address the interplay between the different standards for resolving a motion to amend under Rule 15(a)(2) and a motion to vacate a judgment under Rules 59(e) and 60(b).

First, in *National Petrochemical Company of Iran v. M/T Stolt Sheaf*, 930 F.2d 240 (2d Cir. 1991), the Second Circuit affirmed a district court's denial of a plaintiff's post-judgment motion to vacate the court's grant of summary judgment under Rule 60(b)(1) (for "mistake") in order to amend the complaint. The Court held that, while "it *might* be appropriate *in a proper case* to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment," that case was *not* such a "proper case" because the plaintiff "belatedly" sought to amend after summary judgment in order to "withdraw" certain admissions it had previously made. *Id.* at 245 (emphasis added).

Second, in *Williams v. Citigroup, Inc.*, 659 F.3d 208 (2d Cir. 2011), the Second Circuit held that the district court abused its discretion in denying the plaintiff's request under Rules 59(e) and 60(b) to vacate the judgment in order to file a first amended complaint, where the district court reasoned that the plaintiff "[did] not explain why she should be granted leave to replead at this stage when she failed to request an opportunity to replead in the first instance." *Id.* at 214. In doing so, the Second Circuit held that a plaintiff is under no "obligation to seek leave to replead," either (1) "immediately upon answering the motion to dismiss the complaint (without yet knowing whether the court will grant the motion, or, if so, on what ground)," or (2) "immediately upon receipt of the court's ruling granting the motion and prior to the entry of judgment thereupon." *Id.*

Third, in *Indiana Public Retirement System v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016), the Second Circuit vacated the order of a district court, which denied a plaintiff's motion to vacate a judgment under Rules 59(e) and 60(b) in order to file a second amended complaint and reasoned that the proposed amendments would be futile under Rule 15(a)(2). *Id.* at 93–96. The parties did not raise—and, accordingly, the Second Circuit did not directly address—whether that case was "a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment"; however, in conducting a Rule 15(a)(2) analysis and finding that amendment would *not* be futile, the Second Circuit did, in fact, take into account the nature of the proposed amendments in deciding that vacatur was warranted. *See id.*

Fourth, in *Metzler Investment Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133 (2d Cir. 2020), the Second Circuit upheld the district court's denial of the plaintiff's motion to vacate the judgment under Rules 59(e) and 60(b) in order to file a third amended complaint. In doing so, the Second Circuit interpreted the Supreme Court's holding in *Foman* to stand for the proposition that "it is an abuse of discretion to deny a motion under Rule 59(e)—to prevent a 'manifest injustice,' although the [Supreme] Court did not say so explicitly—when the plaintiff was *never* given an opportunity to replead in the first place." *Id.* at 144 (emphasis added). The Second Circuit also elaborated on its prior ruling in *SAIC*, acknowledging that, in *SAIC*, it did not address "whether that case was a 'proper' one within the meaning of *National Petrochemical*, or indeed what the phrase meant," nor did it "identify any circumstances in the case that would render it 'appropriate' to consider the nature of the proposed amendment in determining whether the judgment should be vacated." *Id.* at 145. The Second Circuit then explained that *SAIC* was a "proper" case in which to consider the nature of the proposed amendment on a motion to vacate the judgment because, in that case: (1) the district court "had

permitted amendment after its first decision on the motion to dismiss"; (2) the plaintiffs chose not to amend but instead proceeded on their surviving claims; (3) "on reconsideration, the district court dismissed all the plaintiffs' claims including the theretofore surviving claims with prejudice, prohibiting amendment without providing a justification"; and (4) "the plaintiffs then were unable to proceed except by motion for relief from the judgment." *Id.* By contrast, *Metzler* was not such a "proper case" because: (1) the district court had issued a "thorough opinion" dismissing the first amended complaint and plaintiff failed to cure those deficiencies in the second amended complaint; and (2), in total, the plaintiffs "had three opportunities to state a claim." *Id.*

Fifth, in *Mandala v. NTT Data, Inc.*, 88 F.4th 353 (2d Cir. 2023), the Second Circuit reversed the district court's denial of the plaintiffs' motion to vacate the judgment in order to file an amended complaint, specifically in the context of a motion for relief from judgment under Rule 60(b)(6)—a catchall provision permitting relief from judgment for "any other reason that justifies relief." In that case, the district court granted the defendant's motion to dismiss the original complaint. *Id.* at 357. The plaintiff appealed; a split panel affirmed the dismissal but, in doing so, noted that the complaint might have survived dismissal had it pled certain allegations to which the Second Circuit alluded in its decision. *Id.* at 357–58. Following a denial of their request for rehearing *en banc*, and one year and eight months after the initial judgment was entered, the plaintiffs sought to set aside the judgment under Rule 60(b)(6) in order to amend their complaint. *Id.* at 358.

Notwithstanding the long delay between the district court's dismissal and the plaintiffs' request to amend, the Second Circuit held that the case was a "proper" one in which to consider the nature of the proposed amendment in determining whether to vacate the judgment, since the

plaintiffs had not yet had the opportunity to amend and the district court provided no "justifying reason" for the denial. *Id.* at 364–65. The Second Circuit also noted that the plaintiffs "cannot be foreclosed from obtaining post-judgment relief solely because they chose to appeal rather than seek vacatur immediately upon dismissal of their claim." *Id.* at 364.

In reaching its conclusion, the Second Circuit in *Mandala* cited a number of prior decisions addressing motions to amend purely in the Rule 15(a)(2) context (i.e., where no judgment had yet been entered and thus Rules 59(e) and 60(b) were not implicated), in which the court emphasized that "it is improper to simultaneously dismiss a complaint with prejudice under Rule 12(b)(6) and deny leave to amend when the district court has not adequately informed the plaintiffs of its view of the complaint's deficiencies." *Id.* at 363 (citing, inter alia, *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019) (noting that the Second Circuit has been "particularly skeptical of denials of requests to amend when a plaintiff did not previously have a district court's ruling on a relevant issue")). On this point, the Second Circuit specifically discussed its ruling in *Loreley Financing (Jersey) No. 3 Limited v. Wells Fargo Security, LLC*, 797 F.3d 160 (2d Cir. 2015), where the Second Circuit held that the district court abused its discretion in denying leave to amend under Rule 15(a)(2) because, at a pre-motion conference on the motion to dismiss, the district court "presented [the] [p]laintiffs with a Hobson's choice: agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead." *Id.* at 190.

Since *Mandala*, the Supreme Court has recently addressed these issues, specifically in the context of a motion to vacate under Rule 60(b)(6). *See BLOM v. Bank SAL v. Honickman*, 605 U.S. ---, 145 S. Ct. 1612 (2025). In *BLOM*, the Supreme Court overturned a summary order by the Second Circuit, which applied *Mandala* to hold that "special considerations . . . come into

play when vacatur is sought in order to obtain leave to file a second amended complaint."

*Honickman v. BLOM Bank SAL*, No. 22-1039-cv, 2024 WL 852265, at *2 (2d Cir. Feb. 29, 2024). Specifically, the Supreme Court held:

> Relief under Rule 60(b)(6) requires extraordinary circumstances. That standard does not become less demanding when a Rule 60(b)(6) movant also hopes to amend his complaint. Rather, *a party seeking to reopen his case and replead must first satisfy Rule 60(b) on its own terms* and obtain Rule 60(b) relief before Rule 15(a)'s liberal amendment standard can apply. Because the Second Circuit's balancing approach conflates this order of operations and dilutes Rule 60(b)(6)'s well-established standard, we must reject it.

*BLOM*, 145 S.Ct. at 1619 (emphasis supplied). However, despite overturning the Second Circuit's application of a lower Rule 60(b)(6) standard for determining whether vacatur is appropriate in order to permit amendment of a complaint, the Supreme Court expressly affirmed its prior holding in *Foman* in the context of Rule 59(e) motions, holding that "because Rule 59(e)" (which must be filed within 28 days of the entry of judgment) "does not threaten the finality of judgments to the same degree" as Rule 60(b)(6) (which has no express time limit), "we do not require a movant to show the same 'extraordinary circumstances' to receive relief." *Id.* at 1622.

Thus, in summary, in determining whether a given case is a "proper" one in which "to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment," the following principles are instructive. *Nat'l Petrochemical*, 930 F.2d at 245. First, a plaintiff filing a post-judgment motion to amend under Rule 15(a)(2) must first show that the judgment should be vacated under Rule 59(e) and/or Rule 60(b). Second, Rule 60(b) enumerates the criteria under which a final judgment may be vacated under that rule and specifically requires a showing of "extraordinary circumstances"; these criteria cannot be diluted when the Rule 60(b) motion is made in conjunction with a motion to amend. *See BLOM*, 145 S.

Ct. at 1619, 1622. Third, nevertheless, when a litigant seeks to vacate or alter a judgment under Rule 59(e) and to amend the operative pleading under Rule 15(a)(2), the court must still conduct the Rule 59(e) analysis first. Fourth, under Rule 59(e), it is a "manifest injustice" to deny amendment without first conducting a Rule 15(a)(2) analysis "when the plaintiff was never given an opportunity to replead in the first place"; accordingly, in such circumstances, it is "proper" to take into account the nature of the proposed amendment (e.g., whether the proposed amendment would be futile or is the result of undue delay, bad faith, or a dilatory motive on the part of the moving party) in determining whether to vacate the judgment under Rule 59(e). *Metzler*, 970 F.3d at 144 (citing *Foman*, 371 U.S. at 182). Fifth, while there is no requirement that a plaintiff be given an opportunity to amend after the issuance of a decision ruling on a motion to dismiss the operative pleading, courts should generally permit amendment at least once after the district court has articulated its substantive concerns with the pleading—again, absent a finding of undue delay, bad faith, dilatory motive, or futility. *See Mandala*, 88 F.4th at 363.

## DISCUSSION

Northwell argues that this is a "proper case" in which to consider its Proposed Second Amended Complaint addressing the Motion to Amend. It relies primarily on Rule 15(a)(2)'s liberal amendment standard in order to advance this argument, rather than either Rule 59(e)'s "manifest injustice" standard or Rule 60(b)'s "extraordinary circumstances" standard, which are the standards applied to determine whether post-judgment relief is warranted. (Mem. at 1–7.) Further, Northwell argues that amendment is warranted under Rule 15(a)(2) because there is no showing of "undue delay, bad faith, dilatory motive, or futility." (*Id.* at 7–25.)

Blue Cross Massachusetts argues that a "proper case" in which to consider the nature of the proposed amendment in determining whether to vacate a judgment is one that "promotes" the principles of "finality inherent in Rule[s] 59(e) and 60(b) and of liberality of amendment under

Rule 15"—i.e., where "a court deems it necessary to do so to determine whether a plaintiff's reasons for seeking post-judgment leave to amend outweigh the principles of finality inherent in Rules 59(e) and 60(b)." [5] (Opp'n at 5–6, 8.) It contends that this is not such a "proper case" because Northwell "previously amended its complaint, is not relying on new discovery evidence or a change in the law, and yet waited until after judgement to seek leave to amend to bring substantively identical claims." (*Id.* at 9.) Blue Cross Massachusetts also argues that I should deny leave to amend because the proposed amendments would be futile and because Northwell has unduly delayed seeking leave to amend. (*Id.*at 9–25.)

As set forth below, I deny the Motion to Amend. Because Northwell brings its Motion to Amend post-judgment, before reaching the amendment analysis under Rule 15(a)(2), I must first determine whether Northwell has shown that the judgment should be vacated under Rule 59(e) or 60(b). Northwell does specify whether it seeks to vacate the judgment under Rule 59(e), Rule

---

[5] Blue Cross Massachusetts also argues that Northwell waived its right to appeal and thus amendment is foreclosed as a matter of law. (Opp'n at 4–5.) Blue Cross Massachusetts relies on my February 22, 2025 Electronic Order granting Northwell's request for an extension of time to appeal the sealed Dismissal Order, the August 2, 2024 redacted Dismissal Order filed on the public docket (ECF No.45), and the Reconsideration Order until "14 days after the Court rules on [Northwell's] letter motion seeking a pre-motion conference concerning its anticipated renewed motion for leave to file a second amended complaint." (Elec. Order Feb. 22, 2025; *see* ECF No. 76 (Northwell's February 20, 2025 request for an extension of time to appeal the three specified Orders.) Blue Cross Massachusetts correctly notes that I ruled on Northwell's pre-motion conference letter on August 18, 2025; accordingly, at that time, Northwell should have filed another motion seeking to forestall the time to appeal until after my ruling on its fully-briefed Motion to Amend. (Elec. Order Aug. 18, 2025.) However, my ruling on the pre-motion conference letter set a briefing schedule for the anticipated motion to amend and did not substantively address whether Northwell should be granted leave to file a second amended complaint under the applicable rules of the Federal Rules of Civil Procedure. Therefore, notwithstanding Northwell's failure to file a motion to extend the time for filing a notice of appeal within fourteen days of my August 18, 2025 Order, I resolve the Motion to Amend. Whether Northwell is permitted to file a notice of appeal concerning the sealed Dismissal Order, the redacted Dismissal Order, and the Reconsideration Order is a separate question that is not before the Court at this time.

60(b), or both. However, given that Northwell filed its initial pre-motion conference letter seeking amendment within 28 days of my issuance of the Dismissal Order, I understand that, at a minimum, Northwell seeks to vacate the judgment under Rule 59(e). *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."). Accordingly, before showing that amendment is warranted under Rule 15(a)(2), Northwell must first show that vacatur is warranted under Rule 59(e) "to prevent a manifest injustice." *Metzler*, 970 F.3d at 144 (2d Cir. 2020).

I find that this case is a "proper" one in which to consider the proposed amendments in determining whether it is appropriate to vacate the judgment under Rule 59(e) to permit Northwell to further amend its Amended Complaint. Nevertheless, based on my close review of the Proposed Second Amended Complaint, I find that amendment would be futile and therefore decline to vacate the judgment under Rule 59(e) to permit Northwell to file a second amended complaint. Moreover, I also find that vacatur it is not warranted under Rule 60(b)'s higher "extraordinary circumstances" standard.

## I.    Whether This is a "Proper Case" in Which to Consider the Nature of the Proposed Amendment in Determining Whether to Vacate the Judgment Under Rule 59(e)

While it is a close question, this is a "proper case" where it is appropriate to take into account the nature of the proposed amendment in determining whether to vacate judgment under Rule 59(e) under the Second Circuit's line of cases interpreting *Foman*, including *Williams*, *National Petrochemical*, *SAIC*, and *Metzler*, for the following reasons.

First, although Northwell *did* have the opportunity to amend its original Complaint after reviewing Blue Cross Massachusetts' first letter requesting a pre-motion conference in anticipation of filing a motion to dismiss (and availed itself of such opportunity), it *did not* have the opportunity to amend after hearing the Court's views concerning the inadequacies in any of

its pleadings—not in a pre-motion conference concerning either Blue Cross Massachusetts' anticipated motion to dismiss the original Complaint or its anticipated motion to dismiss the Amended Complaint, not in oral argument on the fully-briefed Motion to Dismiss the Amended Complaint, and not in a written order from the Court evaluating that motion. *See Mandala*, 88 F.4th at 363 (holding that it is often "improper to simultaneously dismiss a complaint with prejudice under Rule 12(b)(6) and deny leave to amend when the district court has not adequately informed the plaintiffs of its view of the complaint's deficiencies"). In fact, the first time that Northwell heard from this Court regarding its views on any of its pleadings was in the Dismissal Order ruling on the Motion to Dismiss the Amended Complaint. (*See* Dismissal Order.)[6]

Second, although Northwell first filed its Motion for Reconsideration of the Dismissal Order rather than its Motion to Amend, the Second Circuit has noted that a plaintiff availing itself of the available legal process to challenge a district court's ruling does not foreclose its ability to also seek amendment to cure the deficiencies in its pleadings identified in the district court's ruling. *Mandala*, 88 F.4th at 364 (holding that plaintiffs "cannot be foreclosed from obtaining post-judgment relief solely because they chose to appeal rather than seek vacatur immediately upon dismissal").

---

[6] As the parties are aware and as I noted in prior orders, Northwell is currently litigating cases against other BlueCard Program members bringing nearly identical claims based on the same agreements it has raised in this action. District courts have reached different conclusions regarding the viability of Northwell's breach of contract and third-party beneficiary claims against these other BlueCard Program member entities. *See, e.g.*, *Northwell Health, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, No. 23-cv-600, 2024 WL 5108159 (E.D.N.Y. Dec. 13, 2024) (denying motion to dismiss with respect to breach of contract and third-party beneficiary claims). At least one other judge of this District has dismissed all of Northwell's claims on similar grounds to those set forth in the Dismissal Order. *Northwell Health, Inc. v. Group Hospitalization and Med. Servs., Inc.*, No. 23-cv-1268, 2024 WL 5213366 (E.D.N.Y. Dec. 24, 2024) (granting motion to dismiss all claims) (appeal filed).

Blue Cross Massachusetts raises the fact that, through its pleadings and the various motions, Northwell essentially keeps bringing the same, albeit rephrased, claims and arguments, and argues that it "should not have to endlessly litigate seriatim amendments each time Northwell comes up with a new way to restate the same facts and legal theories." (Opp'n at 24.) I find this argument to be persuasive; indeed, I noted in the Reconsideration Order that I had already fully addressed in the Dismissal Order all of the arguments that Northwell raised in its Motion for Reconsideration, notwithstanding Northwell's unsupported contention that the Dismissal Order committed "clear error." (*See* Reconsideration Order at 12–22.) However, while the fact that Northwell continues to bring essentially the same arguments without making material modifications to its factual pleadings is relevant to my finding of futility (discussed below), this alone does not foreclose me from reviewing the Proposed Second Amended Complaint in determining whether it would be appropriate to vacate the judgment under Rule 59(e).

For these reasons, under the principles laid out in *Williams*, *National Petrochemical*, *SAIC*, and *Metzler*, this is a "proper case" in which "to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment" under Rule 59(e).

## II.    Whether Vacating the Judgment Under Rule 59(e) to Permit Amendment Under Rule 15(a)(2) is Warranted

Having taken into account all of the proposed amendments as set forth in the redlined Proposed Second Amended Complaint, I find that amendment would be futile. Accordingly, Northwell has not shown that vacating the judgment is necessary to prevent a manifest injustice under Rule 59(e) as required for it to secure leave to file the Proposed Second Amended Complaint.

Except in very limited circumstances, a plaintiff cannot recover against a defendant for breach of contract where the defendant was not a signatory to the agreement that the plaintiff seeks to enforce. *See Reza v. Khatun*, No. 09-cv-233, 2017 WL 1170559, at *4 (E.D.N.Y. Dec. 22, 2017) ("Under New York law, it is well established that—with few exceptions—a breach of contract claim cannot be maintained against a party who is not a signatory to the underlying agreement, and not in privity with a contracting party.") (collecting cases). First, a plaintiff may recover against a non-signatory defendant where the non-signatory defendant's "relationship with the contracting party is 'so close as to approach that of privity.'" *Id.* at *4–5 (quoting *Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 424 (1989)). A plaintiff may allege such a relationship where the non-party signatory was acting as the defendant's agent in executing the agreement at issue. *See Bailey v. City of New York*, 2024 WL 2947473, *2 (N.Y. App. Div. 2024). A plaintiff may also allege such a relationship where the non-party signatory "manifested an intent to be bound by the contract" or assumed obligations under the contract. *MBIA Ins. Corp. v. Royal Bank of Can.*, 706 F. Supp. 2d 380, 396–97 (S.D.N.Y. 2009) (citing *Horsehead Indus., Inc. v. Metallgesellschaft AG,* 657 N.Y.S.2d 632, 633 (1997)). Second, a plaintiff may recover against a non-signatory defendant where the plaintiff was the intended "third-party beneficiary" of the agreement at issue. *Dormitory Auth. v. Samson Constr. Co.*, 30 N.Y.3d 704, 710–11 (2018). Third, a plaintiff may recover against a defendant under a "quasi-contract" theory, where no contract exists *at all* but where failure to recognize a contract would result in the defendant's unjust enrichment. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).

For the reasons set forth below, the Proposed Second Amended Complaint fails to state a claim under any of these theories.[7]

### A.  Breach of Contract Claim

The proposed amendments do not materially alter Northwell's breach of contract claim as set forth in the Amended Complaint. Accordingly, as explained with respect to the Amended Complaint in the Dismissal Order and the Reconsideration Order, the Proposed Second Amended Complaint fails to state a breach of contract claim against Blue Cross Massachusetts under the theories that Empire acted as Blue Cross Massachusetts' agent in executing the Empire Agreements or that Blue Cross Massachusetts manifested its intent to be bound by the Empire Agreements.

Under New York law, an agency relationship requires a showing of three elements: (1) the manifestation by the principal that the agent shall act on the principal's behalf; (2) the agent's consent; and (3) the understanding of both parties that the principal is in control of the relationship. *Bailey*, 228 A.D. 3d at 715. As to the first element of the test, courts consider whether the principal has vested the agent with "actual authority" (either express or implied) or "apparent authority" to bind the principal. *Id.* at *2. "[A]ctual authority exists where the principal has granted the agent the power to enter into contracts on the principal's behalf, subject to whatever limitations the principal places on this power, either explicitly or implicitly." *Ridge Clearing & Outsourcing Sols., Inc. v. Khashoggi*, No. 07-cv-6611, 2011 WL 3586455, at *7 (S.D.N.Y. Aug. 12, 2011) (citing *Ford v. Unity Hosp.*, 299 N.E.2d 659, 664 (N.Y.1973)), *aff'd sub nom. Broadridge Sec. Processing Sols., LLC v. Khashoggi*, 507 F. App'x 57 (2d Cir. 2013).

---

[7] Because I find that amendment would be futile, I do not address Blue Cross Massachusetts' argument that amendment should be denied due to undue delay.

Apparent authority exists when the "words or conduct of the principal, communicated to a third party, . . . give rise to the appearance and belief that the agent possesses authority to enter into a transaction." *Sherrod v. Mount Sinai St. Luke's*, 168 N.Y.S.3d 95, 102 (2022). Apparent authority requires a "factual showing" that the third party reasonably relied "upon the misrepresentations of the agent because of some misleading conduct on the part of the principal—not the agent." *Id.*

An agent may bind its principal in the absence of express, implied, or apparent authority if the principal ratifies the agent's conduct. *See Crimi v. Nat'l Life Ins. Co.*, 767 N.Y.S.2d 309, 310–11 (2d Dep't 2003). "Ratification is the express or implied adoption of" the unauthorized acts of the agent by the principal with "full knowledge of the material facts." *Hempstead Realty, LLC v. Sturrup*, 2017 WL 2215747, at *5 (N.Y. Sup. Ct. 2017), *aff'd*, 144 N.Y.S.3d 440 (2021) (citing *Holm v C.M.P. Sheet Metal*, 455 N.Y.S. 2d 429, 432 (1982)).

A non-signatory to a contract may also be held liable for breach of contract if it "manifested an intent to be bound by the contract" or assumed obligations under the contract. *MBIA Ins. Corp. v. Royal Bank of Can.*, 706 F. Supp. 2d 380, 396–97 (S.D.N.Y. 2009) (citing *Horsehead Indus.,* 657 N.Y.S.2d at 633). Courts infer an intent to be bound "from the [non-signatory's] participation in the negotiation of the contract, or if the [signatory] is a dummy for the [non-signatory], or if the [signatory] is controlled by the [non-signatory] for the [non-signatory] own purposes." *Id.*

The Proposed Second Amended Complaint's new allegations concerning a purported agency relationship between Blue Cross Massachusetts and Empire are implausible. For example, Northwell argues that the following factual allegations show that Blue Cross Massachusetts gave Empire "actual" or "apparent" "authority to negotiate and execute the

[Practitioner] Agreement," that Blue Cross Massachusetts ratified the terms of the Practitioner

Agreement, or the Blue Cross Massachusetts manifested its intent to be bound by the Practitioner

Agreement:

(1) an alleged BlueCard Program "Membership Standard" requiring Association members participating in the BlueCard Program to "take such action as required to ensure [the Association's] financial performance in programs and contracts of an inter-Plan nature," including the Blue Card Program (Mem. at 10; PSAC ¶¶ 15–17, 43, 47–47, 83–86);

(2) that Blue Cross Massachusetts "agreed that [its] sister organizations, including Empire, would negotiate with local healthcare providers" such as Northwell "on behalf of all member companies" because "they were prohibited from negotiating in-network agreements with providers outside their territory" (Mem. at 10–11; PSAC ¶¶ 53–54, 93–99);

(3) Blue Cross Massachusetts' identification cards issued to its insureds, which it purportedly instructed its insureds "to present . . . to healthcare providers (including Northwell) to obtain medical care" (Mem. at 13–14; PSAC ¶¶ 23–28); and

(4) an alleged "claim determination procedure" pursuant to which Blue Cross Massachusetts reimbursed Empire (Mem. at 16 (PSAC ¶¶ 16, 21, 104–22).)[8]

Even with these allegations, the Proposed Second Amended Complaint fails to plead a plausible

breach of contract claim against Blue Cross Massachusetts for multiple reasons

First, these allegations, read in the context of the entire Proposed Second Amended

Complaint, are insufficient to plausibly allege that Empire had actual or apparent authority to act

as Blue Cross Massachusetts' agent in executing the Empire Agreements. As with the Amended

Complaint, the Proposed Second Amended Complaint alleges no formal agency agreement (or

---

[8] The Proposed Second Amended Complaint does not clearly allege whether Blue Cross Massachusetts agreed to reimburse Empire for payments made to Northwell for services provided to people insured by Blue Cross Massachusetts or whether Blue Cross Massachusetts agreed to pay Northwell directly for such costs. (*See* Proposed Second Am. Compl. ¶ 30 ("Those individuals insured by Defendant's plans who received healthcare services from Northwell . . . were submitted by Northwell for payment and paid in accordance with the terms of the [Practitioner] Agreement."); *id.* ¶ 32 ("More often than not for claims submitted to Defendant during the relevant period, Defendant processed and paid claims at the proper, in-network rates.").)

any agreement at all) between Empire and Blue Cross Massachusetts, instead relying on generic obligations undertaken by each individually as part of their membership in the Association, which administers the BlueCard Program. (*See* Dismissal Order at 23 (finding no allegations of "a written agreement and evidence of direct dealings between the parties alleged to have functional privity").)

The Proposed Second Amended Complaint alleges that, by signing the License Agreement, which prohibits Association member entities from "negotiating in-network agreements with providers outside their territory," Blue Cross Massachusetts "agreed that" Empire "would negotiate with local healthcare providers" like Northwell to set rates on behalf of Blue Cross Massachusetts (and all Association members). (Mem. at 10–11 (citing PSAC ¶¶ 53–54, 93–99).) The Proposed Second Amended Complaint also alleges that "Membership Standards"—to which each Association member individually agrees—require Blue Cross Massachusetts to "take such action as required to ensure [Blue Cross Massachusetts'] financial performance in programs and contracts of an inter-Plan nature," including the Blue Card Program. (PSAC ¶ 48.) But these allegations do not plausibly establish an agency relationship, in light of the fact that the License Agreement signed by Blue Cross Massachusetts and the Association expressly disclaims any such agency relationship, providing: ███████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████ Likewise, the Hospital Agreements between Northwell and Empire expressly provide: ███████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████████████

███████████████████████████████████

(Hospital HMO Agreement art. II.A, ECF No. 21-3.)

Accordingly, the Proposed Second Amended Complaint's allegations do not remedy a key deficiency identified in the Dismissal Order—that "both Blue Cross Massachusetts and Empire mutually participate in the BlueCard Program as separate, independent entities pursuant to the terms and payment structure set out in their separate License Agreements with the Association and relevant provider agreements." (Dismissal Order at 19.) At bottom, the theory Northwell presents in the Proposed Second Amended Complaint is the same as the theory it presented in the Amended Complaint: that, by virtue of its participation in the BlueCard Program, Empire, in executing the Empire Agreements which are *between Northwell and Empire alone*, acted not only as its own principal, but also as the agent to Blue Cross Massachusetts—as well as the agent of every single other Blue Cross entity nationwide that participates in the BlueCard Program. This is not plausible, especially given the fact that Blue Cross Massachusetts and every Association member, other than Empire, did not even see the confidential Empire Agreements between Northwell and Empire. (Proposed Second Am. Compl. ¶ 171 (alleging that Blue Cross Massachusetts had generalized "knowledge" of the Practitioner Agreement "regardless of whether or not it ever saw . . . the [Practitioner] Agreement"); *see also* Dismissal Order at 13 ("It is not plausible that two sophisticated entities such as the parties in this action would agree to be bound to terms they did not negotiate or sign, and which could be amended without their consent.").)

Second, to the extent that Northwell argues that Blue Cross Massachusetts ratified Empire's conduct with respect to Northwell through the alleged "claim determination procedure" pursuant to which Blue Cross Massachusetts paid for its insureds receiving out-of-network care

from Northwell, such allegations are too vague to establish ratification. This is particularly so in light of the fact that the Proposed Second Amended Complaint does not clearly allege whether Blue Cross Massachusetts ever paid Northwell for its treatment of Blue Cross Massachusetts insureds' (as opposed to reimbursing Empire for Empire's payment to Northwell pursuant to a private agreement between Empire and Blue Cross Massachusetts that has not been identified in this litigation). (Mem. at 16 (PSAC ¶¶ 16, 21, 104–22).) In fact, the Proposed Second Amended Complaint's allegations concerning the "claim determination procedure" supports the Court's understanding of the structure of the Empire Agreements—that Empire (not Blue Cross Massachusetts) contracts with Northwell to set rates for in-network providers and that, whatever Blue Cross Massachusetts' obligations to other Association member entities may be, it is not in privity with Northwell. (PSAC ¶¶ 104–22.)

Moreover, as I noted in the Reconsideration Order, Northwell has made the strategic decision not to sue Empire, the Blue Cross entity with whom it does have a contractual relationship. *See* Reconsideration Order at 22 n.6. Whatever the reason is behind Northwell's decision, it cannot use that decision to overcome the requirement under New York contract law that there be privity between Blue Cross Massachusetts and Empire in order to hold Blue Cross Massachusetts responsible for Empire's obligations under the Empire Agreements.

Third, the Proposed Second Amended Complaint does not plausibly allege that Blue Cross Massachusetts manifested its intent to be bound by any of the Empire Agreements. Again, I emphasize that the only alleged relationship between Empire and Blue Cross Massachusetts is through their separate, individual licensing contracts *with the Association*—not through any formal agreements or other relationship *with each other*.

Accordingly, the Proposed Second Amended Complaint fails to state a claim for breach of contract under New York law.

### B.  Third-Party Beneficiary Claims

Northwell's proposed amendments are likewise futile with respect to its third-party beneficiary claims. "New York contract law distinguishes between an intended third-party beneficiary who may sue on a contract *made for its benefit*, and an incidental beneficiary with no right to enforce a particular contract." *In re George Wash. Bridge Bus Station Dev. Venture LLC*, 65 F.4th 43, 54 (2d Cir. 2023) (emphasis added) (citing *Dormitory Auth. of N.Y.*, 30 N.Y.3d at 710). "A party asserting rights as a third-party beneficiary must establish '(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.'" *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006) (quoting *Cal. Pub. Employees. Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434–35 (2000)).

In the Proposed Second Amended Complaint, Northwell raises new, but not materially different, allegations concerning its claim that Northwell was the third-party beneficiary to: (1) the License Agreement between Blue Cross Massachusetts and the Association; (2) any other agreements into which Blue Cross Massachusetts entered with the Association concerning participation in the BlueCard Program; (3) any agreements into which Empire entered with the Association concerning participation in the BlueCard Program; (4) any agreements between Blue Cross Massachusetts and Empire; or (5) Northwell's various agreements with Empire. For example, the Proposed Second Amended Complaint alleges that:

(1) "Empire receives Northwell's statement of its billed charges, confirms the Home Licensee, but then forwards Northwell's claims to Defendant in a standard format" (Mem. at 18 (citing PSAC ¶¶ 104–05));

(2) "Defendant makes the final claim determination in accordance with the Provider Agreement terms" (*id.* (citing PSAC ¶¶ 106–07));

(3) "Defendant delivers its claim disposition to Empire, prohibits Empire from changing the claim disposition, and instructs Empire to transmit it to Northwell" (*id.* (citing PSAC ¶¶ 109–10, 125–26));

(4) "Empire, at Defendant's direction, sends to Northwell, unaltered, the explanation of payment, or Defendant gives Empire written direction and authorization to pay that amount to Northwell, and provides Empire the funds to do so on Defendant's behalf" (*id.* (citing PSAC ¶ 111));

(5) "Defendant handles any appeals submitted by Northwell" (*id.* (citing PSAC ¶ 106–10));

(6) "More often than not, Defendant pays for claims submitted by Northwell at the proper in-network rate" (*id.* (citing PSAC ¶ 32)); and

(7) "Empire only transfers payment to Northwell for services rendered to Defendant's insureds subject to Defendant's control" (*id.* ¶ 115).

Here, Northwell's proposed amendments are insufficient to state a claim that Northwell was the intended third-party beneficiary to the License Agreement between Blue Cross Massachusetts and the Association, the License Agreement between Empire and the Association, or any purported "Membership Standards," "Rules," or other separate agreements among the Association member entities. The Proposed Second Amended Complaint—though more detailed than the Amended Complaint—alleges fundamentally the same structure of relationships in the BlueCard Program as that alleged in the Amended Complaint: that, as members of the Association, Blue Cross entities have agreements with the Association (and potentially among each other, although the Proposed Second Amended Complaint still fails to allege specific facts supporting the existence of any formal agreements between Blue Cross Massachusetts and Empire), but not with any out-of-state providers, each of whom has a direct agreement with an in-state Blue Cross entity. (*Cf.* Am. Compl. ¶¶ 12–13 (alleging that Blue Cross Massachusetts must adhere to ██████████████████████████████████

28

██████████████████████████████████████████ including the BlueCard

Program); Proposed Second Am. Compl. ¶¶ 47–48 ████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████ As I noted in the Dismissal Order, to the extent that Blue Cross

Massachusetts is not fulfilling its obligations to *Empire* or to the *Association*, those entities may

have legal recourse to enforce any agreements between them and Blue Cross Massachusetts.

(Dismissal Order at 33 ("[P]resumably, either the Association or Empire itself could sue if Blue

Cross Massachusetts failed to reimburse Empire under contracts to which they—and not

Northwell—are parties.").)[9]

The fact that Northwell may *incidentally* benefit from the License Agreement between

Blue Cross Massachusetts and the Association, the separate License Agreement between Empire

and the Association, and other "standards" that may apply to Association member entities by

virtue of their entry into such agreements does not make Northwell an *intended* third-party

beneficiary to any of those agreements. *See In re George Wash. Bridge Bus Station Dev. Venture*

*LLC*, 65 F.4th at 54 (holding that "an incidental beneficiary" has "no right to enforce a particular

contract"). Indeed, under Northwell's theory, every hospital system that contracts with an

Association member to provide in-network services to people insured by an out-of-state Blue

Cross entity becomes the third-party beneficiary of the specific agreement between the provider

and the in-state Association member. Therefore, as I found in the Dismissal Order with respect to

the Amended Complaint, such allegations, read in the context of the entire Proposed Second

---

[9] Likewise, Northwell could presumably sue Empire for breach of the Empire Agreements to which Empire is a party. For whatever reason, Northwell has chosen not to do so.

Amended Complaint, fail to plead a plausible third-party beneficiary claim. (*See* Dismissal Order at 29 ("holding that Northwell had not plausibly alleged that it was the intended third-party beneficiary to any "agreements regarding participation in the BlueCard Program, [or] any other agreement between Empire and Defendant, or among the [Association] Member companies as a group, with respect to the BlueCard Program.").)

Northwell's proposed amendments are also insufficient to state a claim that Northwell was the intended third-party beneficiary to its own Empire Agreements with Empire. As an initial matter, it is implausible that Northwell can be the third-party beneficiary of its own Empire Agreements (i.e., where it is not a *third party* at all, but rather a *contracting party*). Further, I find unpersuasive Northwell's argument that it can enforce its Empire Agreements with Empire alone against Blue Cross Massachusetts on the theory that Empire engaged in a "partial assignment of access to Northwell's in-network services, rate, and terms" and Empire's "partial assign[ment]" or "partial delegation" of some portion of its obligations under the Empire Agreements to Blue Cross Massachusetts, including but not limited to "the contractual obligation to pay Northwell pursuant to the Practitioner Agreement when it treats a patient insured under a plan issued or administered by Defendant." (Proposed Second Am. Compl. ¶ 213; *see also id.* ¶¶ 204–06 (alleging that "Empire included in the [Hospital Agreements] terms that gave [Blue Cross Massachusetts] the same access as Empire to Northwell's in-network services, rates and terms," which constitute a "partial assignment" of the Hospital Agreements to Blue Cross Massachusetts).) Northwell advances this "partial assignment" theory in direct contravention of the Hospital Agreements, which *expressly provide* that ██████████████████ ████████████████████████████████████████ ██████████████ (Hospital HMO Agreement art. II.A.). Moreover, Northwell's partial

assignment theory necessarily means that Empire assigned a portion of its obligations under agreements solely between Empire and Northwell to every *single Blue Cross entity that participates in the BlueCard Program*, despite the lack of any allegations in the Proposed Second Amended Complaint that *any* of those entities expressly agreed to any such assignment, much less saw the actual contracts purportedly assigned to them in part. The Proposed Second Amended Complaint simply does not allege a plausible claim that Northwell is a third-party beneficiary of any of the agreements alleged to exist.

### C. Quasi-Contract Claims

"[T]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Villnave Constr. Servs., Inc. v. Crossgates Mall Gen. Co. Newco, LLC*, 161 N.Y.S.3d 480, 485 (2022). Only "where the existence of the contract is *in dispute*" may the plaintiff "allege causes of action to recover for unjust enrichment and in quantum meruit as alternatives to a cause of action alleging breach of contract." *Id.* (emphasis added); *see also Mid-Hudson Catskill Rural Migrant Ministry, Inc*, 418 F.3d at 175 (2d Cir. 2005) ("New York law does not permit recovery in quantum meruit, however, if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim."). "This principle applies even where the plaintiff or defendant *is not a party to the contract*." *Sols. Express Ltd. v. Ashley Furniture Indus., Inc.*, No. 20-cv-7843, 2023 WL 2393861, at *5 (S.D.N.Y. Mar. 7, 2023) (emphasis added); *see also Viable Mktg. Corp. v. Intermark Commc'ns, Inc.*, No. 09-cv-1500, 2011 WL 3841417, at *3 (E.D.N.Y. Aug. 26, 2011) (unjust enrichment claim under New York law precluded by contract even where plaintiff was not party to contract); *Tchrs. Ins. & Annuity Ass'n of Am. v. CRIIMI MAE Servs. Ltd. P'ship*, 681 F. Supp. 2d 501, 511 (S.D.N.Y. 2010) (same), *aff'd*, 481 F. App'x 686 (2d Cir. 2012).

The Proposed Second Amended Complaint does not alter any of the allegations concerning Northwell's quasi-contract claims set forth in the Amended Complaint, notwithstanding the dismissal of these claims in the Dismissal Order and the fact that Northwell did not seek reconsideration of that ruling. (*See* Dismissal Order at 34–37; Mot. Reconsid.) As with the Amended Complaint, the Second Amended Complaint pleads the existence of valid contracts that Northwell seeks to enforce, thereby precluding quasi-contract claims, which require that there is *no* valid or enforceable contract (or that there is at least a dispute as to the existence of a valid or enforceable contract). (*See* Dismissal Order at 36.) Accordingly, the Proposed Second Amended Complaint is futile with respect to Northwell's ability to plead plausible quasi-contract claims.

\*     \*     \*

Northwell's proposed amendments thus do not allege any material new facts that would alter the findings in the Dismissal Order and Reconsideration Order regarding the structure set out by the Blue Card Program (including the License Agreement between Blue Cross Massachusetts and the Association) and the Empire Agreements (which include the Hospital Agreements and Practitioner Agreement, and associated amendments), as well as the relationships and responsibilities of the parties involved. Instead, Northwell's serial motions boil down to a fundamental disagreement with this Court about whether such alleged structure, relationships, and responsibilities plead breach of contract, third party beneficiary, or quasi-contract claims against Blue Cross Massachusetts under New York law. To the extent that Northwell disagrees with this Court's ruling, the proper avenue to raise these disagreements is an appeal, not serial attempts to relitigate the same issues under the guise of different factual theories. *See State Trading Corp. of India, Ltd. v. Assuranceforenigen Skuld*, 921 F.2d 409, 418

(2d Cir. 1990) ("[A] busy district court need not allow itself to be imposed upon by presentation of theories seriatim.").

### III.    Whether Vacating the Judgment Under Rule 60(b) to Permit Amendment Under Rule 15(a)(2) is Warranted

The Supreme Court has explained that a movant seeking vacatur under Rule 60(b) must demonstrate "extraordinary circumstances," and that this standard cannot be relaxed where the movant also seeks leave to amend the complaint post-judgment. *See BLOM*, 145 S. Ct. at 1622 (holding that a movant under Rule 59(e) is "not required] to show the same 'extraordinary circumstances'" required under Rule 60(b) "to receive relief" from a judgment). Northwell fails to demonstrate "extraordinary circumstances" that would merit vacating the Court's dismissal of the First Amended Complaint with prejudice because, for the reasons addressed above, the Proposed Second Amended Complaint fails to plead plausible claims under New York law for breach of contract, breach of a third-party beneficiary contract, and, in the alternative, for unjust enrichment and quantum meruit.

## CONCLUSION

For the reasons explained above, the Court denies Plaintiff Northwell Health, Inc.'s Motion to Amend (ECF No. 84). As reflected in this Opinion and Order, judgment was automatically entered under Rule 58(c)(2)(B) on December 21, 2024—150 days after entry of the July 24, 2024 Dismissal Order (ECF No. 43). *See* Fed. R. Civ. P. 58(c)(2)(B). Accordingly, the Clerk of Court shall file a separate document reflecting that "Judgment" was entered on December 21, 2024, and shall close this case.

Dated: Central Islip, New York
November 24, 2025

*/s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge